SAUK INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74642.    Promulgated July 1, 1936.

*Joseph Nievinski, Esq.,* and *A. G. Elder, Esq.,* for the petitioner. *Elden McFarland, Esq.,* for the respondent.

OPINION.

McMahon: The question to be considered herein is whether the petitioner was formed in 1927 or availed of in 1930 for the purpose of preventing the imposition of the surtax upon its shareholders

through the medium of permitting its gains and profits to accumulate instead of being divided or distributed within the meaning of section 104 (a) and (b) of the Revenue Act of 1928.[1] Subsection (b) of that section provides that the fact that any corporation is a mere holding or investment company shall be prima facie evidence of a purpose of evading the surtax. However, this presumption is not sufficient to fix liability under such statute; "the test remains the state of mind itself, and the presumption does no more than make the taxpayer show his hand." *United Business Corporation of America* v. *Commissioner*, 62 Fed. (2d) 754.

Here the petitioner was organized in 1927 for the purpose of acquiring the Butler-Cobb contract, and, except for the acquisition of such contract and the performance of the obligations arising thereunder, the petitioner transacted no other business. Butler testified, in substance, that the purchase of the stock was a very large purchase, payments for which extended over a period of five years during which something might happen to any one of the four interested therein; that it was necessary for his protection as guarantor of the contract to keep the stock together; that the petitioner was organized so that he could keep the stock together by his control of the petitioner; that, further, it would have been very disrupting in the event one of the parties to whom he has made a partial assignment died or the interest of any one of them became subjected to an attachment by creditors. Jamison testified, in substance, that the reason for incorporating the petitioner was to hold the block of stock purchased intact, to control the vote and to protect Butler if anything happened to the minor participants in the contract, as he understood that the whole contract, being a joint contract, under the laws of the State of Washington would be subject to probate upon the death of any one of the assignees. The testimony of Crosby was to similar effect. Butler testified further that, although in 1927 the prospect of a dividend from the Timber Co. was excellent, there was then no immediate prospect of a dividend; that the payment of a dividend by the Timber Co. was dependent upon future trade conditions and operations; and that the question of paying for the stock in the next five years absorbed them.

[1] SEC. 104. ACCUMULATION OF SURPLUS TO EVADE SURTAXES.

(a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 13 and shall be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.

(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.

The respondent argues that if the corporation had not been formed by Butler, his wife, Jamison, and Crosby, they would have received the bond dividends in 1930 and would have had to pay taxes computed upon the par value of the bonds, in the additional amounts of at least $14,072.89, $4,762.40, $850.06, and $476.24, respectively. However, in *Cecil B. deMille*, 31 B. T. A. 1161, 1174, the Board stated, "But the taxes under these statutory provisions are not imposed because of effects; avoidance *per se* is not prohibited. It is the *purpose*, the intention motivating a course of conduct which is made controlling by the very words of the statute. Unless the *purpose* was to prevent the imposition of surtaxes, the tax may not be imposed."

In our opinion, and we have so found, the petitioner was not formed in 1927 for the purpose of preventing the imposition of the surtax upon its stockholders in 1930 through the medium of permitting its gains and profits to accumulate instead of being divided or distributed.

Was the corporation availed of in 1930 for such purpose? It is apparent that, although the petitioner had a book surplus of $144,-115.11 at the end of 1930, the petitioner had no funds or property which it could distribute to its shareholders; it had no cash on hand and the participation certificates representing the first and second mortgage bonds issued by the Timber Co. as a dividend were held by the National Bank in escrow under the terms of the Butler-Cobb contract. Its only remaining asset was the Butler-Cobb contract, which had not been completed and upon which there was still owing an unpaid balance of $49,373.41. The instant proceeding is distinguishable from cases wherein it was held that the corporations therein involved were formed or availed of for the purpose of preventing the imposition of surtaxes upon its shareholders, it appearing therein that the shareholders withdrew or borrowed substantial available sums from such corporations for their own purposes.[2] In the instant proceeding the stockholders did not withdraw funds from the petitioner, but the petitioner was indebted to its stockholders at the end of 1930 for advances made to it from 1927 to 1930, inclusive, in the aggregate amount of $119,447.48. Except for the profit for the year 1930 in the amount of $4,522.52, representing the difference between interest received in 1930 in the amount of $9,626.59 and interest paid in 1930 in the amount of $5,104.07, the surplus account discloses no other profits, except the cash dividends received in 1927 and 1928 in the amounts of $11,200 and $22,400, respectively,

---

[2] *United Business Corporation of America*, 19 B. T. A. 809; affirmed in *United Business Corporation of America* v. *Commissioner*, 62 Fed. (2d) 754; certiorari denied, 290 U. S. 635; *William C. de Mille Productions, Inc.*, 30 B. T. A. 826; *A. D. Saenger, Inc.*, 33 B. T. A. 135; *Edward G. Swartz, Inc.*, 33 B. T. A. 355. See *Gardiner* v. *Welch*, —— Fed. Supp. —— (Dist. Ct., S. Dist. Cal., Feb. 13, 1936).

and the amount of $138,936, representing the portion of the par value of the first and second mortgage bonds received as a dividend in 1930 allocated to income or earned surplus, which latter amount was adjusted by the respondent to $133,345.05. Prior to 1930 the petitioner had no interest income. The total amount of interest paid in each year prior to 1930 was carried into surplus as a loss for each year. There was no accumulation of surplus beyond the reasonable needs of petitioner's business in 1930. Except that portion represented by the second mortgage bonds, all of it had been applied and paid on the Butler-Cobb contract. As heretofore stated, the participation certificates representing the second mortgage bonds were held in escrow by the National Bank.

Under all the facts and circumstances we are of the opinion, and have so found, that the petitioner was not availed of in 1930 for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed; and its gains and profits were not permitted to accumulate in 1930 beyond the reasonable needs of its business.

The respondent points on brief to his Exhibit F as strong evidence that the petitioner was availed of for the purpose of evading surtaxes, and in particular to the statement therein as follows:

* * * It is understood that when such assignment shall have been made such dividends as may be declared upon the International Timber Company shares will, in effect be payable to the Delaware Corporation, although the said shares of the International Timber Company still stand in the name of the seller, assigned by him in blank and deposited in escrow in a bank with the contract of purchase, and said dividends being in effect payable from one corporation to another corporation, will not be subject to the Federal Income Tax until they are paid out by the Delaware Corporation [petitioner] by way of dividends.

The accountant testified, among other things, that he was secretary of the petitioner merely for the purpose of keeping its books since its incorporation; that he had two other men who assisted him in keeping the records and in preparing the tax returns for 27 corporations; that he usually prepared a memorandum similar to Exhibit F so that if anything happened to him the men would know what he had done; that he knew, as appears in the memorandum, that the petitioner was to be formed; that the information contained in the first part of the above quoted statement was obtained from the Butler-Cobb contract itself and not from his discussion with Butler; that he did not talk about the transaction with any stockholder other than Butler; that, when he added the portion of such statement to the effect that dividends payable by one corporation to another corporation will not be subject to Federal income tax until paid out

to shareholders, he probably had in mind the effect that this would have upon the petitioner's Federal income tax return because that was the law and he knew that he would be called upon to make its returns and take care of matters of that sort; that he prepared the memorandum for his own use and attached it to the journal of petitioner; that he did not at any time exhibit such memorandum to Butler or the other shareholders; and that he voluntarily turned over such memorandum to the revenue agent who examined the books of petitioner and permitted him to take it out of the office for the purpose of making a copy thereof. Butler testified that such accountant was the "head of the office", that such accountant was entrusted with the bookkeeping and the preparation of the tax return of petitioner; that he never looked over the books and records of the corporation; that the accountant and the books were on the floor above; that he never went up to the accountant but that the accountant came down to him; and that he had never seen such memorandum. Section 23 (p) (1) of the 1928 Act provides that dividends received by a corporation from a domestic corporation shall be allowed as a deduction from gross income; and the Butler-Cobb contract provided that any dividends which might be received from the Timber Co. were to be applied on the contract. Hence, the accountant's explanation of the preparation of such memorandum, and in particular the quoted portion thereof, is plausible and reasonable, especially in view of the fact that he was expected to prepare the petitioner's tax returns. Under all the facts and circumstances, in any event, such statement in the memorandum is not sufficient to sustain a finding or holding of a purpose or intention on the part of Butler and his associates to form the petitioner in 1927 or avail of it in 1930 for the purpose of evading surtaxes as contemplated by the applicable statute. There is no evidence that such purpose or intention was disclosed to the accountant, or that such memorandum actually reflected such purpose or intention on the part of Butler and his associates, or that such purpose or intention on their part existed, sufficient to justify such findings or holdings.

The petitioner also adduced evidence as to the value of the bonds of the Timber Co. issued as dividends and in particular pertaining to the value of the second mortgage bonds in support of its claim that the book surplus was overstated in that the value of the bonds was considerably below par. It is also contended by petitioner that the bonds were payable out of a sinking fund to be created by contributions on the basis of $3.75 per thousand feet of lumber logged and hence were not a taxable distribution. In view of our holding that the petitioner was not formed in 1927 or availed of in 1930 for the purpose of preventing the imposition of surtaxes upon its shareholders through the medium of permitting its gains and profits to

accumulate beyond the reasonable needs of its business instead of being divided or distributed, as heretofore fully set forth, it is not necessary for us to pass upon these or other contentions of the petitioner not heretofore disposed of herein or other questions suggested by the record; but see *A. D. Saenger, Inc.*, 33 B. T. A. 135, to the effect that a corporation owning less than a majority of the stock of another corporation may be a "holding" company within the meaning of the applicable statute.

Reviewed by the Board.

*Decision will be entered for the petitioner.*