## WORLD PUB. CO. v. UNITED STATES.

### Civ. No. 2879.

United States District Court,
N. D. of Oklahoma.

Feb. 29, 1952.

Byron V. Boone and B. Hayden Crawford, of Tulsa, Okl., for plaintiff.

Whit Y. Mauzy, U. S. Dist. Atty., Tulsa, Okl., Ellis N. Slack, Acting Asst. Atty. Gen., and Andrew D. Sharpe and Lester L. Gibson, Special Assts. to the Atty. Gen., for defendant.

SAVAGE, Chief Judge.

The question presented in this case is whether the additional tax provided by Section 102 of the Internal Revenue Code, 26 U.S.C.A. § 102 should be paid by the World Publishing Company upon the theory that the corporation was availed of in 1944 for the purpose of preventing the imposition of a surtax upon its sole shareholder (except for qualifying shares) through the medium of permitting profits to accumulate instead of being distributed as a dividend.

The Court makes and enters the following findings of fact and conclusions of law:

Findings of Fact

## I.

The Commissioner of Internal Revenue assessed a deficiency tax against the World under Section 102 for the year 1944 in the amount of $16,801.76. The tax was paid on June 15, 1950, together with interest in the amount of $5,257.95 and a timely claim for a refund was denied. This action was subsequently instituted by the World to recover the amount paid.

## II.

The World is an Oklahoma corporation organized in 1906 with an outstanding capital stock of the par value of $25,000. As of December 31, 1944, its outstanding capital stock consisted of 10,000 shares of the par value of $1,000,000. Eugene Lorton was and had been for many years the sole shareholder of the corporation, except for one share each issued to Maud Lorton, his wife, F. O. Larson and N. G. Henthorne to qualify them to serve as members of the Board of Directors.

## III.

The World publishes the Tulsa Daily World, a morning newspaper. The City of Tulsa had a rapid growth and the circulation of the newspaper increased proportionately. The World followed a policy of accumulating profits for the purpose of paying for the cost of expanding its mechanical facilities as required. A five story building was constructed in 1917, and used presses were purchased. Four stories were added to this building in 1927, and the presses were reconditioned at which time it became necessary to borrow $50,000. This was the only occasion upon which the World borrowed money.

## IV.

At a meeting of the Board of Directors held on December 12, 1939, Mr. Lorton reported that the presses were quite old and would not serve the needs of the World much longer and it was recommended that a reserve fund be set aside for the purchase of new presses. A resolution was thereupon passed by the Board of Directors providing that $250,000 be set aside in a reserve fund for the purchase of new presses and accessory equipment and the acquisition of a lot and the construction of a building. In 1940, the World purchased a lot adjacent to its building for $60,000, and announced to the public that a building would be erected thereon.

## V.

In July of 1941, World entered into a contract with the Tulsa Tribune Company, publisher of the Tulsa Tribune, an afternoon newspaper, pursuant to which the Newspaper Printing Corporation was formed. One-half of the stock of the Printing Corporation was issued to the World and one-half to the Tribune. The Printing Corporation printed both papers using the mechanical facilities of the World, and the Tribune moved its offices into the World Building. It thereupon became apparent that the presses owned by World were inadequate for the publication of both papers, and it was necessary to have certain sections of the Sunday World printed elsewhere. The acquisition of new presses and the erection of a building to house them became an urgent need.

## VI.

At a meeting of the Board of Directors of the World on December 21, 1942, Lorton reported that it was imperative that new presses be purchased and that a new building be constructed at the earliest practicable date. He then estimated that the minimum cost of new presses would be $350,000, and the minimum cost of a suitable building would be $150,000. A resolution was thereupon adopted setting aside an additional $150,000 for presses and accessory equipment and an additional $100,000 for construction of a new building, and authorizing the president to purchase new presses and cause the building to be constructed at the earliest practical date. We were at war upon that date and it was not possible to actually purchase and procure delivery of the presses at that time. The building could not be constructed until after the presses were purchased because the size and character of the building would depend upon the presses acquired. The officers of the World proceeded, however, without delay to make necessary investigations for the purpose of

determining what presses should be purchased.

## VII.

The Tribune was to pay one-half of the cost of the presses and accessory equipment. There was some doubt, however, that the Tribune would have on hand sufficient funds to meet its obligation and it was necessary for the World to be in position to advance the full cost thereof. When the presses were subsequently acquired, the World did make advances on behalf of Tribune which were later paid in full. This is not considered an important circumstance.

## VIII.

In 1944, the World entered into a contract for the purchase of presses and accessory equipment which was, shortly thereafter, cancelled because of a decision on the part of the World to purchase from another manufacturer. A contract was entered into with Hoe & Company on May 25, 1945, for the purchase of new presses and accessory equipment by the terms of which World became obligated to pay the full cost. A down payment of $10,000 was made and the estimated cost was $636,489.38, although the contract contained an escalator clause providing that the cost was to be finally computed upon the basis of cost at time of delivery.

## IX.

A contract for construction of the building was let on a cost plus basis. The estimate furnished to the World on August 18, 1945, by the contractor awarded the construction contract was $300,000 with an addition of $1,600 for dismantling an old building on the lot. The total estimated cost of the presses and the new building in 1945 was $938,089.38.

## X.

The construction of the building was commenced in October of 1946 and completed in September of 1948. The presses were installed in March of 1948. The total cost of the building was $1,027,555.30. The total cost of the presses and accessory equipment was $1,304,465.94, one-half of which was eventually paid by the Tribune. The total amount actually paid by the World was $1,679,788.27, practically all of which was paid during the years 1947, 1948 and 1949. The total building cost includes $188,336.99 for air conditioning the old building as well as the new and an item of $93,606.94 for alterations made in the old building. It was planned at the outset to air condition the new building. When a compressor was purchased for air conditioning the new building, it was decided that it should have sufficient capacity to take care of the old building as well. It was later determined that employees working in the old building would be dissatisfied if the new building was air conditioned and the old one was not. While it was not specifically contemplated in 1944 that the new building would be air conditioned as part of the expansion program, it was a normal development and probably not a wholly unexpected consequence thereof.

## XI.

As of December 31, 1944, the World had quick assets in excess of current liabilities in the amount of $732,576.40. The World had paid dividends from a part of its earnings for the years 1934 to 1941 inclusive, except for the years 1937 and 1938. All of its net profits for the years 1942 and 1943, as well as the year 1944, were retained in the treasury for the purpose of having funds available for payment of the cost of its expansion program.

## XII.

At the end of 1944 there was ample justification for optimism with respect to an early successful termination of the war. In the light of all circumstances then existing, it was prudent business on the part of the World to retain its earnings for the year 1944 in its treasury in order to have sufficient funds to pay the cost of the program to which it was then committed. The retention in the corporate treasury of 1944 earnings did not result in an accumulation beyond the reasonable needs of the business.

## XIII.

In determining the reasonable business needs of the World, consideration must be given to its need for some working capital. Under its arrangement with the Tribune and the Printing Corporation, a large

amount of working capital was not required, but certainly it was essential that it have on hand some working capital, the exact amount of which need not be decided.

## XIV.

If the Court should be adjudged to be in error in its conclusion that the failure of the World to distribute earnings in 1944 did not result in an accumulation in excess of the reasonable needs of the business, it is further found that the World has established by a clear preponderance of the evidence that such earnings were not held in the treasury for the purpose of enabling its sole shareholder to avoid payment of the surtax.

## Conclusions of Law

### I.

■ The judgment in the case of World Publishing Company v. United States, D.C., 72 F.Supp. 886; Id., 10 Cir., 169 F.2d 186, sustaining an assessment of the Section 102 penalty tax for the years 1942 and 1943, does not constitute a bar to the action of the World in this case either by estoppel or under the principles of res judicata.

### II.

■■ Whether accumulation of profits or earnings by a corporation is beyond the reasonable needs of the business is a question of fact to be determined in the light of the facts and circumstances disclosed in each case. In making a computation of the quick assets available to meet business needs of the corporation, the depreciation reserve may not be deducted. The fact that a corporation has wasting assets which are deteriorating from year to year is a factor which may be given some consideration in determining its reasonable business needs. Where, as here, most of the expenditure to be made was for new equipment and a new building, only slight consideration can be given to the matter of depreciation.

### III.

■ When it has been determined that the failure of a corporation to distribute earnings to shareholders does not result in an accumulation in excess of the reasonable business needs of the corporation, it is not necessary to inquire into the motive and purpose of such accumulation. Upon the theory, however, that this view of the Court may not be accepted, a finding has been made upon consideration of all of the evidence in the case that the retention by the World in its treasury of its net earnings for 1944 was not for the purpose of avoiding the imposition of a surtax on its sole shareholder.

Counsel for plaintiff will present to the Court a decree in conformity with these findings of fact and conclusions of law for entry of judgment on March 14, 1952.