GAZETTE PUB. CO. v. SELF.
Civ. A. No. 2193.

United States District Court
E. D. Arkansas, W. D.

March 28, 1952.

Henry M. Armistead (of Armistead, Rector and Armistead) and J. G. Williamson (of Rose, Meek, House, Barron & Nash), Little Rock, Ark., for plaintiff.

Ellis N. Slack, Acting Asst. Atty. Gen., Andrew D. Sharpe, Lester L. Gibson, Sp. Assts. to Atty. Gen., James T. Gooch, U. S. Atty., Gerland P. Patten, Asst. U. S. Atty., Little Rock, Ark., for defendant.

TRIMBLE, Chief Judge.

This is an action by the plaintiff, Gazette Publishing Company, a corporation, against the acting collector of Internal Revenue for this district for the recovery of a Section 102, 26 U.S.C.A. § 102, assessment made for the calendar years, 1946 and 1947.

Plaintiff was incorporated under the laws of Arkansas on June 5, 1889, for the purpose of publishing a newspaper, The Arkansas Gazette, and conducting related business enterprises, and has carried on such business since its incorporation. Plaintiff timely filed with the Collector of Internal Revenue for the District of Arkansas its corporation income tax returns for the calendar years, 1946 and 1947. In its income tax returns for 1946 plaintiff reported a net income of $634,884.37 and an income tax liability of $233,750.18, which tax was timely paid. In its income tax return for 1947, plaintiff reported a net income of $618,964.88 and an income tax liability of $230,061.17, which tax was timely paid.

By letter dated March 20, 1950, the Internal Revenue Agent in Charge, Oklahoma Division (which included Arkansas) notified the plaintiff of a proposed deficiency assessment against the Company of Section 102 surtax in the amount of $111,378.19 for 1946, and $97,250.03 for 1947 (Tr. 53). The Revenue Agent who proposed the assessment based his recommendation of the assessments upon the assumption that the earnings retained in 1946 and 1947 were accumulated for the purpose of buying the Allsopp stock in 1948, which determination was accepted by the Revenue Agent in Charge, and the Section .102 assessment made on that determination (Tr. 721–722. Def.Ex. 8, pp. 1 and 2).

On June 23, 1950, and June 26, 1950, the deficiency assessments under Section 102 were paid by the plaintiff, as follows:

On or about June 30, 1950, plaintiff filed with the defendant claims for refund for the deficiencies for 1946 and 1947, and on November 7, 1950, the Commissioner of Internal Revenue rejected plaintiff's claims for refund.

In apt time, on November 24, 1950, plaintiff filed this action praying judgment against the defendant in the sum of $243,049.89, together with interest thereon at the rate of six per cent per annum from June 30, 1950, until paid.

During the years, 1946 and 1947, Mr. J. N. Heiskell was president of the corporation, and Mr. Fred Allsopp was secretary-treasurer and general manager until his death in March, 1946. Upon his death, his son, W. C. Allsopp, who had been assistant business manager, succeeded to the positions held by his father. This situation had existed for many years. The business was run by informal conferences between these men, and no formal meetings of the Board of Directors or stockholders were held in which minutes were kept between March 24, 1944, and November, 1948. Formal meetings were only held when it was necessary to approve or ratify some action of the officers. Three of the directors and nine of the stockholders were ladies and they had complete confidence in the officers and left the management of the business to them.

The basis for the imposition of a Section 102 Assessment is that the corporation be formed or availed of for the purpose of preventing the imposition of a surtax upon the stockholders through the medium of permitting the earnings and profits to accumulate instead of being divided and distributed. As this corporation was formed in 1889, the defendant admits it was not formed for such a purpose, therefore, the only question is: Was it availed of for that purpose in the years, 1946 and 1947?

| Year | Tax Deficiency | Interest | Total Deficiency |
|---|---|---|---|
| 1946 | $111,378.19 | $21,491.41 | $132,869.60 |
| 1947 | $ 97,250.13 | $12,930.26 | $110,180.29 |
| Totals | $208,628.32 | $34,421.67 | $243,049.89 |

It is the purpose, the intention motivating a course of conduct (accumulation of earnings) which is made controlling by the very words of the statute. Unless the purpose was to prevent the imposition of surtaxes, the tax under Section 102 may not be imposed. C. I. R. v. Cecil B. DeMille Productions, Inc., 31 B.T.A. 1161, affirmed 9 Cir., 90 F.2d 12, certiorari denied, Helvering v. Cecil B. DeMille Productions, 302 U.S. 713, 58 S.Ct. 32, 82 L.Ed. 551. Walkup Drayage & Warehouse Company, 4 T.C.M. 695 (1945).

Section 102(c) of the Code, Supplement A, provides that if the earnings or profits of the corporation are permitted to accumulate beyond the reasonable needs of the business this shall be prima facie evidence of a purpose to avoid the surtax upon the stockholders. And this evidence is determinative of the purpose to avoid surtaxes on the stockholders unless the corporation by a clear preponderance of the evidence shall prove to the contrary. However, this statutory presumption can arise only if the court first determines that the earnings were in fact accumulated beyond the reasonable needs of the business.

"It having been established as a fact that the earnings or profits of the Plaintiff Corporation have not been permitted to accumulate beyond the reasonable needs of the business, no prima facie case arises of a purpose to avoid the imposition of the surtax upon the shareholders." Steele's Mills v. Robertson, 32 A.F.T.R. 1734 (unreported in official reports).

■ Whether or not earnings have been retained for the purpose of evading taxes on the stockholders is a question of intent, and each case must of necessity be decided upon facts and circumstances in that case. There is no rule of thumb or yardstick by which this question of intent can be decided. The court must look at the matter from the viewpoint of the officers of the corporation, and place himself in the position they occupied at the time, take into consideration all of the facts and circumstances then existing and say what the officers intended at the time, in the years, 1946 and 1947. In the Universal Steel Company, 5 T.C. 627, at page 637, the Tax Court said: "In the numerous discussions and conclusions in cases of this character, there is no set standard of measurement. Prominent factors in one case may become minor in another."

The plaintiff corporation had a long history of paying generous dividends. For the twenty years ending with 1945, the year immediately preceding the questioned years, the corporation had net earnings after taxes of $2,288,000 and paid out $2,167,000 in dividends, retaining in the business for this period no more than $120,000 of the earnings. A study of the record discloses that the dividends paid in 1946 and 1947 were above the Corporation's average dividend in amount over the preceding ten year period. The 1947 dividend of $107,000 was the highest dividend paid since 1936. The record also discloses that more than half of the substantial increase in retained earnings during the period in question over prior years was due to the repeal of World War II excess profits tax. This gave to the officers of the Corporation an opportunity to begin to accumulate funds to meet the reasonable needs of the business, and without the necessity of reducing dividends.

■ The sale of the Allsopp stock, in 1948, was not the purpose for which the funds were accumulated during 1946 and 1947. The uncontroverted evidence in this case is that the proposed sale of the stock first came up in a flare of temper between Mr. Patterson and W. C. Allsopp in 1948, and that when the sale was proposed in 1948 it was a complete surprise to the president and the board of directors of the corporation. There is not one iota of direct evidence in this record to show that this sale was ever contemplated by anybody before that time, and this court cannot assume facts which do not appear of record. There is certainly no evidence in this case which would justify this court in assuming that the only witnesses who personally know the facts have testified falsely. It must be remembered that these witnesses are not men of unknown character or reputation. They have always borne the reputation of being men who would "swear to

their own hurt and change not". Before this court would be justified in holding they were deliberately swearing falsely the evidence must be clear, convincing and be otherwise unexplainable. No such evidence exists. In fact, all of the factual and circumstantial evidence in the case supports the verity of their testimony.

■ Defendant's argument seems to be, that because the funds accumulated in 1946 and 1947, were used in 1948 in purchasing the Allsopp stock, the court should conclusively presume that the funds were accumulated in 1946 and 1947 for that purpose. There is no such presumption, conclusive or otherwise. If there were a presumption, it would be a rebuttable one, and like all such presumptions would disappear in the face of positive, credible, contravening testimony.

■ It is axiomatic that any determination by the Commissioner in any tax case is presumed to be correct. So well established is this principle that the citation of authorities and decisions of court would be academic. But such presumption only places upon the taxpayer the burden of first going forward with the evidence. If and when the taxpayer introduces any evidence that the Commissioner's determination is in error, this presumption is no longer of probative force and effect, and the issue then will be decided upon the preponderance of the evidence adduced at the trial of the cause. So in this case the Commissioner's determination that earnings were allowed to accumulate beyond the needs of the business is met by positive, clear and convincing evidence, by record and testimony of the officers before the court, that the earnings allowed to accumulate in 1946 and 1947 were not beyond the reasonable needs of this particular business, and the presumption is now of no avail to the defendant.

"Ordinarily it will indeed be difficult to prove the forbidden purpose, unless the accumulations are too large for the fair needs of the business. * * * A statute which stands on the footing of the participants' state of mind may need the support of presumption, indeed be practically unenforceable without it, but the test remains·

the state of mind itself, and the presumption does no more than make the taxpayer show his hand." United Business Corporation of America v. Commissioner of Internal Revenue, 2 Cir., 62 F.2d 754, 755.

■ Defendant contends that the price of $1,000,000 paid for the Allsopp stock in 1948 was so far in excess of the true market value of that stock, that it is evident that there was in fact no reasonable need for the accumulation of the funds in 1946 and 1947.

It is in evidence that certain special interests have for many years sought to purchase or acquire stock in the corporation, and an interest in the publication of the Arkansas Gazette, the newspaper published by the corporation. The officers testified that the management has always watched the matter closely, fearing that if some group of special interests should acquire stock in the corporation, however minor it might be, such group of special interests would endeavor to break up the harmony existing in the management, and change the editorial and business policy of the corporation, which had conducted the business of the corporation so successfully so many years. When the Allsopp stock was offered for sale at $1,000,000, all the officers and directors of the plaintiff corporation knew this was in excess of its true market value. They were informed by the attorney for the Allsopp stockholders that the stock could be sold to an outsider for that amount of money. They recognized this as a business crisis. Knowing that their failure to acquire this stock for the corporation might in the future affect the interest of the corporation and its stockholders adversely, it was decided to make the acquisition and promote and keep intact the harmony of management and editorial policy of the corporation.

Defendant does not seem to recognize that this business is subject to changes in circumstances and conditions, and that good business judgment upon the part of management requires changes in plans to meet these changes of circumstances. This is true with this plaintiff as with all other business enterprises, and the courts have

recognized that this is so. All business needs are relative. The most pressing needs today may not be the most pressing at a later date, because even more pressing needs may arise because of changed circumstances, and courts have frequently refused to sustain Section 102 Assessments where the funds accumulated for reasonable needs and owing to change in circumstances the funds were used only partially or not at all as originally planned.

In Dill Manufacturing Co., 39 B.T.A. 1023, it was the purchase of the minority stock which forced the postponement of plans for a new plant, and the Board of Tax Appeals, in reversing a Section 102 Assessment by the Commissioner, held the purchase of the minority stock was a reasonable business need of the company. The Board of Tax Appeals, said in that case: "The issue of preferred stock with the obligation to retire it within five years evidenced a debt, (cases cited). And this record, at most, does not establish that the liquidation of the syndicate stock by the partial use of that preferred stock, under the circumstances here, was not required as a reasonable business necessity. Cf. Sauk Investment Co., 34 B.T.A. 732; Mellbank Corporation, 38 B.T.A. 1108."

See also National Yarn Corporation, 9 TCM 603; General Smelting Co., 4 T.C. 313; The Wean Engineering Co., Inc., 2 TCM 510; Emeloid Co., Inc., v. Commissioner of Internal Revenue, 3 Cir., 189 F. 2d 230. In the case of Fred F. Fisher, 6 TCM 520, the Tax Court held that the promotion of harmony in the conduct of the business is a proper business purpose. There, taxpayer's sister, a minority stockholder, had been constantly complaining about the conduct of the business. To put an end to the dissension, the company purchased the sister's stock at a price considerably in excess of its fair market value. The Commissioner, contending that the stock purchase was prompted by reasons personal to the stockholders and not in furtherance of any corporate purpose, assessed a deficiency on the other stockholders on the theory that the excessive portion of the purchase price constituted a constructive dividend. But the Tax Court held that the

Company's purchase of the sister's stock was in furtherance of corporate purposes. The Tax Court pointed out that "there is no foundation for an assumption that a corporation would never, in its own interests, pay more than the fair market value of its stock in order to rid itself of a complaining minority stockholder," and that the excessive price paid for the stock "was not unreasonable for the purpose of promoting harmony in the conduct of the business and securing it from annoying interference and threats of legal proceedings." The Court said, "regardless of whether * * * complaints were justified, they had a nuisance value sufficient to warrant the action of the corporation in purchasing her stock."

The Arkansas Gazette, published by the plaintiff, is said to be the oldest daily paper west of the Mississippi River. It has enjoyed a long, honorable and successful career under able and eminent editors, among them the present President of the Corporation. It has a well established policy, standing firmly and stoutly for all the great moral issues arising from time to time, has had a great part in the development of the whole state, and has at all times supported worthy public causes and men in public life with telling effect. It has consistently over a long term of years refused to accept advertisements for alcoholic liquors of any kind. It also has had and still has strong editorial policies on many issues which special interests might and would oppose. For this Allsopp stock to have fallen into the hands of some special interest antagonistic to the present and the general policy of the paper, could and probably would have been most disruptive of the harmony of the corporation, even though it constituted a minority of all the stock. The purchase of this stock, even at the advanced price paid, was a reasonable need of the corporation, and was a change in circumstances which fully justified a change in the use of funds accumulated for other needs, and justified the borrowing of the $600,000 in addition to using the funds on hand.

■ Was the plaintiff corporation an "incorporated pocketbook" for two families, as contended by the defendant?

During the years, 1946 and 1947, and for many years prior thereto, the common stock of the Corporation was owned as follows:

were dependent upon the dividends from this stock for the ordinary comforts of life. Each one of them constituted a separate

| Stockholder | Shares | Percentage Ownership |
|---|---|---|
| W. C. Allsopp (Fred Allsopp prior to 3/16/46), | 2,009 21/56 | 21.15 |
| J. N. Heiskell, | 1,126 29/56 | 11.86 |
| Mary C. (Mrs. Fred Allsopp) | 407 1/2 | 4.29 |
| Wilhemina (Mrs. J. N.) Heiskell | 1,607 1/2 | 16.92 |
| Fred Heiskell Trust (for benefit of Fred Heiskell's widow, Georgia R. Heiskell, and two daughters, Grace Terry and Josephine Harrison) | 1,978 21/56 | 20.82 |
| Georgia R. (Mrs. Fred) Heiskell, | 7 1/2 | .08 |
| Rowena H. Yeager ⌈Sister of J. N. Heiskell ⌉ | 591 3/7 | 6.22 |
| Effie Heiskell " " " " " | 591 3/7 | 6.22 |
| Grace Heiskell " " " " " | 591 3/7 | 6.22 |
| Elizabeth H. Smith ⌊ " " " " " ⌋ | 591 3/7 | 6.22 |
| Total | 9,502 1/2 | 100.00 |

Fred Heiskell, now deceased, was the brother of J. N. Heiskell.

As these stockholders had held their shares of stock for many years it could not be argued, indeed no such argument is made, that the stock was divided up this way so as to prevent the assessment of additional taxes upon the stockholders. The same facts shut off any logical argument that there is involved here only two family economic units. While in each group the stock was acquired from a common source, this is not even persuasive on this question. In the case of Walsh v. Commissioner of Internal Revenue, 8 Cir., 170 F.2d 535, 539, there was involved Mary P. Walsh, the mother, Tom Walsh, the son, and Marjorie Walsh, his wife, and their daughter. There the Court said: "Marjorie C. Walsh and her daughter were not members of Mary P. Walsh's immediate family. Neither the donor nor the donees contributed to, nor was either responsible for, the support of the other."

This corporation was not taxwise 'or otherwise an "incorporated pocketbook." While Mr. Heiskell and Mr. Allsopp were naturally and from a moral standpoint interested in the welfare of their sisters and relatives, they were not legally responsible for their support. All but one of the sisters

economic unit so far as the law is concerned.

■ There is no convincing evidence in this record that the managing officers of the corporation made any decision with a view to preventing the assessment of a surtax upon the stockholders. Naturally, they took every legal means to effect a saving in payment of taxes, but such a course has the approval of the courts, so long as the steps taken are not illegal or done with an illegal intent to defraud the government of taxes due and to become due.

A consideration of all the evidence offered on behalf of the defendant fails to disclose any affirmative evidence that the earnings or profit of the business were permitted to accumulate beyond the reasonable needs of the business. On the other hand the Revenue Agent, upon whose recommendation the Commissioner made the Section 102 assessment complained of, testified that the whole basis of his assessment in this case was the assumption that the accumulation of earnings in 1946 and 1947 was for the purpose of buying the Allsopp stock in 1948 (Tr. 721–722).

■ There has been a great deal of evidence and many pages of the briefs devoted to what the reasonable needs of this business were during the years, 1946 and 1947,

and since that time. The defendant, in effect, asks this court to substitute its judgment, and the judgment of the Commissioner and revenue agent for the judgment of the officers of the corporation. The stockholders of the corporation have entrusted the management of the business to the officers, and have vested them with discretion in such matters, and it is not the prerogative of the court to substitute its judgment for theirs, unless it appears from a preponderance of the evidence, that in exercising that judgment they have been motivated by an intent to prevent the imposition of a surtax upon its stockholders.

The testimony of the officers of this corporation, the foreman and supervisors of its different departments, and the experts which it employed, clearly evince that the needs of this plaintiff corporation for repairs, replacements, expansion, more operating reserves, were immediate needs, and not needs whoch might or might not arise and have to be met at some future day. The demand for these items was upon the vincing that had it not been for the sale of company. The evidence is clear and conthe Allsopp stock, in 1948, and the Section 102 assessment that many, if not all of these *needs* would have been met out of accumulated earnings. This court knows of no line of authorities which requires this corporation, or any other taxpayer to do its financing in any particular way, so long as the way it selects is a legitimate way, and has no ulterior motivation, nor improper purpose in making the selection.

The Courts recognize the right of the directors of a corporation to use judgment and recognize that they undertake very grave responsibilities in the management of a company, and that contingencies arise constantly which they must meet, and must take into consideration if sound business judgment is to be exercised and the business is to be kept on a sound financial basis. The courts also recognize that in meeting these responsibilities the directors and officers must and do have a certain degree of discretion. A case in point is that of Dill Manufacturing Co., 39 B.T.A. 1023. The Board of Tax Appeals there said: "*A fortiori,* a corporation certainly must have the untrammelled right, within reasonable limits, to financially protect itself and its shareholders. * * * So, particularly where, as here, the petitioner is not a holding company, but is engaged in a manufacturing business, which is so obviously hazardous from a business point of view, we will hesitate before substituting our judgment upon the reasonableness of the corporate accumulations for that of the directors." See Klug & Smith Co., 18 B.T.A. 966."

In the case of Lane Drug Company, 3 TCM 394, the Tax Court had a similar question before it, and it said: "As an operating company, petitioner had the right to legitimate expansion. * * * This record evidences no excessive inventories; no loans to any officers or stockholders; no investments in stocks or bonds of other corporations; and no intent to expand into collateral or unrelated lines of business, or to unreasonably expand within its own field. Under the circumstances, we are reluctant to substitute our judgment for that of the directors who are legally charged with the duty of weighing and deciding this important economic question."

This view is also supported by the case of Syracuse Stamping Co., 4 TCM 371, 374, and Steele's Mills v. Robertson, 32 A.F. T.R. 1734.

Even should the Court in its own mind form the conclusion that the discretion exercised by the directors or officers of the plaintiff and the judgment based thereon was not the best, there must be room for honest differences of opinion, and as long as the intention of the officers in arriving at that judgment was not the preventing of the imposition of a surtax on stockholders, the court will recognize the right of the management to exercise their judgment. A difference of opinion as to the soundness of a particular decision of the management is not determinative of the question here, but can only be a circumstance. Certainly such a difference is not indicative of an improper use of that discretionary power. See Howard Flint Ink Co., 11 BTA Memo Decisions 1019, Kales v. Woodworth, 6 Cir., 32 F.2d 37. At page 39, the Court of Appeals for the Sixth Circuit said: "There

was no showing in this case that these profits were permitted to accumulate for the purpose of evading taxes. The board of directors contemplated using them for extensions of business, and while the Supreme Court of Michigan held that it would be an abuse of discretion to devote them to that purpose, there was no intimation by that court, nor has there otherwise been one, to the effect that they were being withheld to avoid tax levies."

This court is certainly not interested in whether the judgment and discretion exercised by the directors and management of the plaintiff corporation was the best or soundest, or even whether they were mistaken entirely in their judgment. Even conceding they were mistaken in their judgment, it does not convince the court that their motive or intent in accumulating these funds was the preventing of the assessment of surtaxes against the stockholders.

What was said by the Board of Tax Appeals, in Refam, Inc., and Emad, Inc., 6 BTA Memo Decisions 105, is pertinent here: "We are not interested in whether this was the best plan to accomplish the desired purpose. It was a legitimate plan made in good faith without any motive to prevent the imposition of surtaxes."

The case of The Crawford County Printing and Publishing Company, 17 T.C. ——, has been decided by the Tax Court since this suit was submitted to the court and while the court was awaiting the filing of briefs. This was a corporation publishing a newspaper, and there were many features similar to the case at bar. The Commissioner had made a Section 102 Assessment against the corporation, and the Tax Court in refusing to sustain the Commissioner's Section 102 Assessment said: "Determination of the reasonable needs of its business is, in the first place, a task for the officers and directors of the corporation. What is reasonable in one situation may be unreasonable in a different context of facts. We should be hesitant to attribute a sinister or ulterior motive to the corporation unless such a factual situation clearly appears. The law contemplates that any legitimate business may grow if legitimate means be employed. There are various and sundry ways, all natively legitimate, by which a business may acquire the means of growth and finance its proper expansion. It can issue capital stock or other securities. It may resort to bank loans. Yet again it may plow its earnings back into the business for immediate use. Still another method, equally legitimate, absent an ulterior purpose, is to accumulate its earnings until the expansion can be timely undertaken. * * This (last) method was employed by petitioner."

■ The Court finds from all the evidence in the case, and giving such weight to the statutory presumptions as the law requires, that the earnings and profits were not accumulated in 1946 and 1947 beyond the reasonable needs of the corporation. Nor were such earnings accumulated for the purpose of preventing the imposition of a surtax upon the stockholders.

Having found this the Court is not required to determine any other question. "When it has been determined that the failure of a corporation to distribute earnings to shareholders does not result in an accumulation in excess of the reasonable business needs of the corporation, it is not necessary to inquire into the motive and purpose of such accumulation. Upon the theory, however, that this view of the Court may not be accepted, a finding has been made upon consideration of all of the evidence in the case that the retention by the World in its treasury of its net earnings for 1944 was not for the purpose of avoiding the imposition of a surtax on its sole shareholder." This citation is from an opinion by the United States District Court for the Northern District of Oklahoma, in World Publishing Company v. United States, D.C., 104 F.Supp. 784, 787.

Counsel for plaintiff will prepare and present for signing findings of fact and conclusions of law, with a praecipe for judgment. All findings of fact and conclusions of law presented and requested by either party in conflict with the findings of fact and conclusions of law and this memorandum are refused.