Phoenix Coal Company v. Commissioner.
Phoenix Coal Co. v. Commissioner
Docket No. 44046.
United States Tax Court
T.C. Memo 1955-28; 1955 Tax Ct. Memo LEXIS 313; 14 T.C.M. (CCH) 96; T.C.M. (RIA) 55028; January 31, 1955
*313 Dulany Mahan, Jr., Esq., for the petitioner. S. Jarvin Levison, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioner's income taxes for the calendar years 1946 and 1948 in the amounts of $702.38 and $408.77, respectively. The questions to be decided are (1) whether the statute of limitations bars any adjustment of items on petitioner's 1945 income tax return so as to prevent respondent from allocating a greater proportion of petitioner's 1947 net operating loss carry-back to 1945 and thereby determining a deficiency for 1946; and (2) whether the sum of $5,000 received by petitioner in 1948 in settlement of a lawsuit was ordinary income or received in lieu of damages for injury to good will and hence subject to capital gains treatment. If the latter is found, the proper basis for the good will must be determined to ascertain the extent, if any, of realized capital gain. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner was a corporation organized in 1917 under the laws of the State of New York and dissolved in 1951. Its corporate income *314 tax returns for the years in controversy were filed on an accrual basis with the collector for the second district of New York. At all times material herein, petitioner was a distributor of bituminous and anthracite coal in the New York City area. It acquired coal from mine operators for distribution to large consumers, such as bakeries, and to retail coal companies. Petitioer usually took title to the coal, but not possession. In many cases, it merely acted as agent and received a commission for directing delivery to its customers. During the first 3 years of its operation, petitioner reported for income tax purposes a net loss of $276.78 and net incomes of $3,507.60 and $2,253.45, respectively. E. S. Keay and Charles H. Dayton, petitioner's founders, each received $5,000 worth of its stock. Petitioner had a total capitalization of $10,000 when it commenced operations. Keay purchased Dayton's shares in 1928 and became petitioner's controlling stockholder-officer. He retained this position until his death in 1946. Mrs. Winnifred Keay, Keay's wife, attended many parties given by her husband to entertain people in the coal business during the period from October 1916 to March *315 1917, prior to the organization of petitioner. She was not employed by her husband during that period. Keay also traveled a great deal during that period. Some money was spent on behalf of petitioner in the early years of its existence to establish good trade relations and good will with potential customers and mine operators. These expenditures were not deducted on any of petitioner's income tax returns as current expenses. Keay owned 110 shares of petitioner's outstanding 150 shares of stock at his death in July 1946. For purposes of an accounting in the New York County Surrogate Court, the executrix of Keay's estate listed these securities at a total fair market value of $14,563.78 as of the date of his death. In or about September 1947, petitioner commenced suit against Fuel Service Company, Inc., Fuel Distributing Corporation, William P. Anderson, secretary of Fuel Service Company, Inc., C. F. Wade and W. W. Davenport. Wade and Davenport had been officers and directors of petitioner for more than 10 years preceding April 1947 and, with Keay, constituted its management until the latter's death. They continued as its sole management until April 1947 when they resigned as officers *316 and directors. Petitioner alleged in the first cause of action of its complaint that Wade and Davenport had conspired with the defendant corporations and Anderson while still in petitioner's employ to destroy its business by certain specified acts. Petitioner claimed a loss of business profits and customers, damage to its trade relations, and loss of good will. Petitioner's prayer for relief pursuant to its first cause of action included demand for an accounting and recovery of all profits derived from the alleged wrongful acts after April 1947; for an injunction against continuation of these acts; for a return of books, records and customer data allegedly taken unlawfully from petitioner by Wade and Davenport; and for damages for injury to good will. Two other causes of action were alleged in the complaint. After the filing of general denials by all defendants in the above action, petitioner served notice on Anderson of examination before trial. Beneduce, attorney for petitioner in the above action, believed that he would have difficulty in proving petitioner's damage claims because it was going out of business, whereas the coal producers and consumers whose testimony was essential *317 to petitioner's case would be dependent in the future on new business relations already established with the defendants. In December 1948 a settlement was reached in the above action whereby defendant Fuel Distributing Corporation paid $5,000 to petitioner and the latter gave a general release to all defendants in the suit. No part of the payment was based on the second and third causes of action in the complaint. The payment constituted a lump-sum settlement of the allegations in the first cause of action. During discussions prior to the settlement, nothing was said to indicate that the settlement was intended to compensate for either lost profits or good will. Petitioner did not report the payment of $5,000 as ordinary income or capital gain on its tax return for the year 1948. The payment was included as a credit to earned surplus on the analysis thereof appearing on that return. Petitioner did not maintain an account in its books and records entitled "Good Will." Petitioner had net income for the calendar year 1942 in the amount of $5,631.13. Petitioner had net income for the calendar year 1943 in the amount of $1,891.69. Petitioner had a net operating loss for the *318 calendar year 1944 in the amount of $1,642.31. In reporting its income for the calendar year 1945 the petitioner carried forward the net operating loss for 1944 instead of carrying it back to 1942, and deducted it in reporting a net income for 1945 of $3,865.30 and a tax liability of $1,078.91. During 1946 and the years prior to the death of E. S. Keay, petitioner paid the premium, amounting to $158.21 in each year, on a life insurance policy insuring the life of Keay in favor of petitioner. The payments were deducted from income in computing the income for the years 1945 and 1946. Petitioner made charitable contributions totaling $90 during the year 1945 and that amount was deducted in computing income for the year 1945. Petitioner reported net income for the calendar year 1946 in the amount of $4,992.56 and a tax liability of $1,048.43. Petitioner had a net operating loss for the calendar year 1947 in the amount of $7,674.51. Petitioner reported a net loss for the calendar year 1948 in the amount of $3,053.51. On March 15, 1948, petitioner filed an application for tentative carry-back adjustment, Form 1139, based upon net operating loss carry-backs from 1947 of $4,067.88 *319 to 1945 and $3,606.63 to 1946. In computing petitioner's net income for 1945 for the purpose of determining the extent to which the 1947 net operating loss carry-back applied thereto, respondent disallowed the amounts deducted for insurance payments and charitable contributions referred to above, as well as the 1944 net operating loss which petitioner had carried forward to 1945. The net income for 1945 as recomputed by respondent totaled $5,868.40. The net operating loss for 1947 was then carried back to 1945 in that recomputed amount, leaving $1,806.11 of the 1947 loss to be carried back to the year 1946 instead of the $3,606.63 claimed. Opinion I. In determining a deficiency for the year 1946, respondent concluded that a smaller portion of a 1947 net operating loss carry-back could be offset against taxable income for 1946 because a larger amount would first have to be applied to the preceding year 1945. This was in turn due to his conclusion that a 1944 net operating loss had been brought forward erroneously to 1945 without first being offset against income for prior years, and that certain deductions for charitable contributions and payment of insurance premiums were not *320 properly allowable in 1945. Petitioner contends only that re-examination and adjustment of items reported on its 1945 income tax return are barred by the statute of limitation. It is well-settled that we may consider such facts arising in other tax years as may be necessary for our redetermination of a deficiency in the year before us. Section 272(g), Internal Revenue Code of 1939; [1]Greenleaf Textile Corporation, 26 B.T.A. 737, affd. per curiam (C.A. 2) 65 Fed. (2d) 1017; W. M. Ritter Lumber Co., 30 B.T.A. 231, 277; Ernest J. Keefe, 15 T.C. 947. Respondent has not attempted to determine a deficiency for the year 1945, which is admittedly barred by the statute of limitations. Cf. Edward G. Leuthesser, 18 T.C. 1112; Ione P. Bouchey, 19 T.C. 1078. More significantly no deficiency for the year 1945 could have existed under the present facts. [2] The carry-back loss from 1947 eliminated all of petitioner's income for 1945 and would do so under the theory of either party. In addition, after offsetting the entire *321 1945 net income, some residue of the 1947 carry-back remained to be applied to the next succeeding year which is the one in controversy. The only question is how much. It is in order to determine this question and hence to compute the deficiency due for 1946 that it becomes necessary to decide how the 1945 tax liability affects the 1947 carry-back. Determination of this narrow question cannot be barred bearing in mind the provisions of section 272(g). See Estate of William H. Block, 39 B.T.A. 338, 341, affd. (C.A. 7) 111 Fed. (2d) 60, certiorari denied 311 U.S. 658. *322 Petitioner has made no effort to justify the 1945 offset and deductions which respondent has adjusted for the purpose of computing the 1946 deficiency, and admits that the Greenleaf and Keefe cases are controlling if its statute of limitations argument is inapplicable. Consequently, we conclude that respondent's determination is correct as to this issue. [3] See James W. Pennock, Jr., 25 B.T.A. 1331, 1334, affd. per curiam (C.A. 2) 64 Fed. (2d) 1018. II. Respondent disallowed a net operating loss carry-back from the year 1948 to the year 1946 and determined a deficiency for 1948 on the ground that the sum of $5,000 recovered by petitioner in a lumpsum litigation settlement in the latter year is allocable solely to lost profits rather than to claims of injury to good will, and hence is ordinary income in its entirety, rather than a return of capital. Petitioner's attorney in the settlement negotiations testified that neither he nor the defendants in the local proceeding ever indicated that any part of the proposed settlement amount was attributable to claims based *323 on injury to good will. Keay, petitioner's co-founder, principal stockholder and driving force behind its management throughout most of its existence, died in July 1946. The nature of petitioner's activities as a coal distributor were such that its good will was connected personally and primarily with Keay, as well as with its other managing officers who were defendants in the company action. Petitioner has shown no remaining good will following the latter's resignation, and before they commenced active competition. And petitioner's net earnings in the 2 years following the defendants' resignation had dropped from their average in the 2 preceding years in an amount more than twice the entire settlement recovery. [4] In these circumstances, we cannot conclude that petitioner has sustained its burden of proving that any part of the $5,000 was allocable to good will. Glenshaw Glass Co., 18 T.C. 860, 870, affd. (C.A. 3) 211 Fed. (2d) 928, certiorari granted 348 U.S. 813 (October 14, 1954).
*324 Nor has petitioner established its contention that lost profits were used in its cause of action, and hence in its settlement, merely as a measure of the injury to its good will, rather than as an independent basis for damages. Cf. Farmers' & Merchants' Bank v. Commissioner, (C.A. 6) 59 Fed. (2d) 912. Consequently, respondent's determination must be upheld. Glenshaw Glass Co., supra; Armstrong Knitting Mills, 19 B.T.A. 318; H. Liebes & Co. v. Commissioner, (C.A. 9) 90 Fed. (2d) 932. Decision will be entered for the respondent. Footnotes
1. SEC. 272. PROCEDURE IN GENERAL * * *
(g) JURISDICTION OVER OTHER TAXABLE YEARS. - The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid. ↩
2. Any proceeding dealing directly with that year would hence be dismissed for lack of jurisdiction. Greenleaf Textile Corporation, supra.Yet the net loss for the year could be considered in a proceeding as to another year. Greenleaf Textile Corporation, supra.↩
3. Disallowance of a further premium payment for 1946 is not contested by petitioner.↩
4. Year
Net Profit
Net Loss
1945
Based on petitioner's figures. * $5,507.61
1946
* 4,992.56
1947
* $7,674.51
1948
Settlement recovery not included.
#↩* 3,053.51