ERNEST J. KEEFE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17321.   Promulgated December 28, 1950.

*William W. Johnston, C. P. A.*, for the petitioner.
*Leo C. Duersten, Esq.*, for the respondent.

950

**OPINION.**

RAUM, *Judge:* The petitioner seeks to deduct from his gross income amounts which he paid as premiums on insurance on his own life. However, if petitioner "is directly or indirectly a beneficiary under such [policies]" within the meaning of section 24 (a) (4) of the Internal Revenue Code,[1] the claimed deduction is forbidden, and it becomes unnecessary to consider other objections to its allowance alternatively asserted by the respondent.

The petitioner and his business partner each took out insurance on his own life; each named the other as the beneficiary under the policies he obtained, and each paid the premiums on the policies he procured.

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

     *      *      *      *      *      *      *

(4) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy;

     *      *      *      *      *      *      *

They agreed that, upon the death of either, the partnership was to be dissolved in the following manner: (1) Bills, accounts and notes receivable were to be collected. The proceeds therefrom and other cash were to be used to pay or provide for partnership debts or obligations. (2) After meeting the debts and obligations, one-half of the remaining proceeds and cash was to be paid to the representative of the deceased partner. (3) The insurance taken out by the decedent was to be promptly collected by the survivor and paid to the decedent's representative. (4) Title to all the remaining assets of the partnership was to vest solely in the surviving partner. The interest of the deceased partner in the partnership was to be completely satisfied by the payments just described above. (5) Policies maintained by the survivor on his own life, of which the decedent was the named beneficiary, were to accrue to the survivor and the decedent's estate was to have no rights under those policies.

Petitioner asserts that section 24 (a) (4) of the Internal Revenue Code is inapplicable because the beneficiary explicitly designated, under the policies on the petitioner's life, was his partner, Bausman. This, of course, is not enough to remove the bar against deduction contained in that section if the petitioner was "directly or indirectly" a beneficiary under those policies. As was pointed out a number of years ago, "* * * the beneficiary contemplated by Section 215 (a) (4) [now § 24 (a) (4)] is not necessarily confined to the person named in the policy, but may include one whose interests are indirectly favorably affected thereby." *J. H. Parker*, 13 B. T. A. 115, 116.

On its significant facts, the case before us is closely parallel to *Joseph Nussbaum*, 19 B. T. A. 868. There, too, each of two partners, engaged in commercial banking, insured his own life and, without reserving any power to make a change, named the other the beneficiary. It was held that the premiums paid by each partner were not ordinary and necessary expenses in carrying on their business, and that, even if it were otherwise, "When we consider the broad provisions of the statute and the manner in which the policies of the two petitioners are related by the agreement entered into between them, we are of the opinion that the petitioners are indirectly, if not directly, beneficiaries under the policies for which the premiums were paid and therefore not entitled to the deductions claimed." *Id.*, pp. 871–872. Cf. *Clarence W. McKay*, 10 B. T. A. 949; *Hewett Grain & Provision Co. of Escanaba*, 14 B. T. A. 281; *Alexander C. Yarnall*, 9 T. C. 616, affd., 170 Fed. (2d) 272 (CA-3).

There are at least several considerations, each of which independently suggests that the petitioner herein was "directly or indirectly" a beneficiary, and when they are taken in the aggregate we are left without any doubt that petitioner had such a vital interest

in the policies that the premiums must be regarded as nondeductible under section 24 (a) (4).

At the very outset, it is to be noted that the policies on petitioner's life made no provision for a beneficiary in the event that he should survive the named beneficiary. But section 6 of the partnership agreement provided that upon the death of either partner the survivor "shall have all rights" in the policies upon his own life. Thus, petitioner in fact retained the right to reacquire complete ownership of the policies taken out on his own life, if he should outlive his partner. Section 24 (a) (4) does not speak of one who is directly or indirectly *the* beneficiary; it merely refers to one who is directly or indirectly "a" beneficiary under the policy. And petitioner's contractual right to acquire absolute control over the policies if he should survive Bausman certainly constitutes such a substantial interest that he may fairly be characterized as being "directly or indirectly a beneficiary" under the policies. Cf. *Jefferson* v. *Helvering*, 121 Fed. (2d) 18 (CA-3) ; *J. H. Parker*, *supra*, p. 116.

But petitioner's interest went far beyond the potential reacquisition of control over his policies. As was said in the *Nussbaum* case (19 B. T. A. at p. 871), "the situation must be viewed as a whole." And viewing the situation as a whole, it is at once apparent that the policies taken out by petitioner were merely part of an interdependent reciprocal arrangement whereby Bausman took out policies on his own life in an amount equivalent to the face value of petitioner's policies, naming petitioner as the principal beneficiary thereunder. Cf. *Lehman* v. *Commissioner*, 109 Fed. (2d) 99 (CA-2), certiorari denied, 310 U. S. 637; *Hanauer's Estate* v. *Commissioner*, 149 Fed. (2d) 858 (CA-2), certiorari denied, 326 U. S. 770; *Orvis* v. *Higgins*, 180 Fed. (2d) 537 (CA-2), certiorari denied, 340 U. S. 810. Under the partnership agreement the insurance proceeds were to be applied in such manner that petitioner would be entitled to receive a going business intact rather than a half interest in a business that might possibly be forced into liquidation. These are benefits of great magnitude. They are inextricably interwoven with the policies taken out by petitioner, and cannot be considered in isolation. We conclude that as a result of these benefits petitioner was "directly or indirectly a beneficiary" under his policies.

Even if the situation be viewed on the assumption that petitioner might predecease Bausman, there were still substantial benefits that he reserved for his estate. On his death his estate was assured of receiving cash in a definite amount, and was spared the hazards that at some time in the future the partnership assets might be reduced in amount or, even if undepleted, might be in a form entailing difficulty or loss in their liquidation. It is true that on the petitioner's death his estate would have been entitled to a share of the partnership assets,

and that this share has been surrendered under the arrangement for mutual insurance. This does not, however, diminish the benefits mentioned; they are benefits which attached just because the petitioner arranged to have his estate receive the insurance proceeds rather than his interest in the partnership. Whether such benefits, standing alone, are sufficient to constitute petitioner a beneficiary under section 24 (a) (4) need not be decided in this case, for when they are taken in conjunction with the valuable interests retained by petitioner in the event of his survivorship, we are fully satisfied that section 24 (a) (4) is applicable here.

Although the respondent's disallowance of the deductions must stand. the deficiency determined for 1944 must be revised. The petitioner claims a net operating loss deduction in 1944, based on a carry-back from 1946, and the respondent concedes that the petitioner is entitled to such a deduction in the amount of $7,428.28. We do not disagree with the respondent that we lack jurisdiction in this case to adjudicate the petitioner's tax liability for 1946. But in determining petitioner's liability for 1944, we may take into account a deduction for 1944 based on a carry-back growing out of an undisputed net operating loss in 1946. Cf. *Birch Ranch & Oil Co.*, 13 T. C. 930; *W. M. Ritter Lumber Co.*, 30 B. T. A. 231, 277–278. Since the parties are in agreement as to the amount of the deduction exclusive of the premium payments, disallowance of which we affirm, it is not necessary in this case for us to consider any additional facts relating to 1946.

The petitioner also seeks to have us consider "overpayments" in tax made by him for the taxable years 1944 and 1945. His income tax returns for those years showed that the payments made under his declaration of estimated tax exceeded the liability disclosed on the returns in the amounts of $279.96 for 1944 and $895.38 for 1945. On his returns for those years he requested that these excess amounts be credited against his succeeding year's tax. It is not disputed that this was not done, and that the petitioner has not yet received either a credit or a refund with respect to these amounts. The respondent does not controvert the fact or amounts of these excess payments. The respondent contended at the hearing, however, that the Court is without jurisdiction to entertain any claims based on these excess payments, that there is involved only "an administrative matter to be determined between Petitioner and the Collector's office at the time when the payments are finally made on this deficiency as determined by the case."

The question of the power of the Court thus placed in issue cannot be resolved without reference to sections 271 and 322 (d) of the Code. The first of these sections deals with the definition of "deficiency," and the second with the Court's jurisdiction to determine overpayments. These sections, as they apply to the taxable years involved in

this case, were amended by subdivisions (a) and (d), respectively, of section 14 of the Individual Income Tax Act of 1944. Section 14 of the 1944 Act supplied a set of integrated changes made necessary by the recently adopted system of current tax collection, based on estimated tax payments and withholding of tax at the source. The provisions of section 14 were first added to the measure when it was pending in the Senate, and the accompanying Report of the Senate Committee on Finance shows that the reason for the enactment of this scheme of amendments was the need to provide for the problems arising out of the new circumstance that advance payments made on an estimate of the tax might exceed the tax finally determined to be due. See Sen. Rept. No. 885, 78th Cong., 2d Sess., pp. 37–41.

The plan adopted by the 1944 amendments for dealing with this situation consisted, in part, of not taking into account such excessive payments in ascertaining the existence of deficiencies. See Sen. Rept. No. 885, *supra*, at pp. 38–40. To accomplish this, it was necessary to amend the definition of "deficiency" then appearing in section 271 (a) of the Code. Section 14 (a) of the 1944 Act qualified the statutory definition by providing, through the addition of section 271 (b) (1), that "The tax imposed by this chapter and the tax shown on the return shall both be determined without regard to payments on account of estimated tax   *   *   *."[2] It is therefore clear that, in redetermining the deficiencies before us, we cannot be concerned with the excessive payments made by the petitioner on his declarations of estimated tax. Cf. *Paul Irvin Redcay*, 12 T. C. 806.

Congress did not intend, however, that such excessive payments should be ignored. In this connection, section 14 (d) of the 1944 Act amended section 322 (d) of the Code regarding the jurisdiction of the Court to determine overpayments. Theretofore section 322 (d) provided for a determination of overpayment only where it was found that there was no deficiency for the year in question. There was added to the jurisdiction of the Court the power to determine the amount of overpayment even for a year for which we find there is also a defi-

---

[2] As amended by the 1944 Act, section 271 of the Code now provides:

DEFINITION OF DEFICIENCY.

(a) IN GENERAL.—As used in this chapter in respect of a tax imposed by this chapter, "deficiency" means the amount by which the tax imposed by this chapter exceeds the excess of—

      (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

      (2) the amount of rebates, as defined in subsection (b) (2), made.

(b) RULES FOR APPLICATION OF SUBSECTION (a).—For the purposes of this section—

      (1) The tax imposed by this chapter and the tax shown on the return shall both be determined without regard to payments on account of estimated tax, without regard to the credit under section 35, and without regard to so much of the credit under section 32 as exceeds 2 per centum of the interest on obligations described in section 143 (a) ;

\*      \*      \*      \*      \*      \*      \*

ciency.[3] Commenting on this addition to the Court's jurisdiction, the Senate Finance Committee stated (Sen. Rept. No. 885, *supra*, at p. 41) :

Inasmuch as under the new system of tax collection it is possible that there may be a deficiency, within the meaning of the definition, for a taxable year in which there is also an overpayment, subsection (d) of Section 14 amends section 322 (d) of the code to authorize the Tax Court to determine the amount of the overpayment in such cases.

On the uncontroverted evidence before us, we think that we are under plain instruction from Congress to determine that the petitioner made excessive payments on his 1944 and 1945 income tax in the amounts claimed.

We conclude that the respondent acted properly in disallowing deductions for the life insurance premiums, but that the deficiencies determined by him must be recomputed to the extent necessary to give effect to the net operating loss deduction. Our decision will include, in addition, a determination of overpayments in the amounts of the excess payments made by the petitioner on his 1944 and 1945 income tax.

*Decision will be entered under Rule 50.*

---

[3] Section 322 (d) as amended provides :

OVERPAYMENT FOUND BY BOARD.—If the Board [now the Tax Court] finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, *or finds that there is a deficiency but that the taxpayer has made an overpayment of tax in respect of such taxable year,* the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer. * * * [Emphasis added.]

The italicized language was added by section 14 (d) of the 1944 Act.