HENRY E. PRUNIER AND WINIFRED L. PRUNIER, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH E. PRUNIER AND ROSE Z. PRUNIER, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53701, 53702. Filed April 12, 1957.

---

[5] See *United States* v. *Balanovski,* 236 F. 2d 298, 306; Surrey and Warren, "A. L. I. Income Tax Project," 66 Harv. L. Rev. 1161, 1196 (1953).

[6] G. C. M. 25131, 1947–2 C. B. 85.

*George B. Lourie, Esq.,* for the petitioners.
*Frank V. Moran, Jr., Esq.,* for the respondent.

OPINION.

WITHEY, *Judge:* Where a corporate employer pays insurance premiums on the life of an officer or employee whose estate or family is the beneficiary, the premiums are subject to tax as part of the employee's compensation. *George Matthew Adams*, 18 B. T. A. 381; *N. Loring Danforth*, 18 B. T. A. 1221; *Frank D. Yuengling*, 27 B. T. A. 782, affd. (C. A. 3) 69 F. 2d 971; *Commissioner* v. *Bonwit*, (C. A. 2) 87 F. 2d 764, certiorari denied 302 U. S. 694, affirming in part and reversing in part *Paul J. Bonwit*, 33 B. T. A. 507. They are in turn deductible as such by the corporate employer. *Berizzi Brothers Co.*, 16 B. T. A. 1307. Similar reasoning leads to the possibility of taxation as dividends where the insured is a stockholder as well as an officer or employee. *Casper Ranger Construction Co.*, 1 B. T. A. 942; *Paramount-Richards Th.* v. *Commissioner*, (C. A. 5) 153 F. 2d 602; *Oreste Casale*, 26 T. C. 1020, on appeal C. A. 2. On the other hand, where the corporation is directly or indirectly a beneficiary under the policy, the premiums are not deductible by the corporation, section 24 (a) (4), Internal Revenue Code of 1939,[2] because in the nature of an investment of corporate capital. See *Merrimac Hat Corporation*, 29 B. T. A. 690. And the premiums are not chargeable as income to the officer, employee, or stockholder. See O. D. 627, 3 C. B. 104.[3]

There is no dispute between the parties with respect to the fore-

---

[2] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(4) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, *when the taxpayer is directly or indirectly a beneficiary under such policy;* \* \* \* [Emphasis added.]

[3] If a corporation pays the premiums on an individual life insurance policy carried on the life of one of its officers or employees who is permitted to designate the beneficiary and *in which the corporation is not in any way a beneficiary,* premiums so paid will, in the absence of satisfactory evidence to the contrary, be presumed to constitute taxable income to such officer or employee. [O. D. 627. Emphasis added.]

going general principles. The controversy is as to which of those principles is applicable here.

The petitioners take the position that by virtue of the agreements in 1946 and 1950 respecting the disposition to be made of the proceeds from policies on the lives of Joseph and Henry the corporation was, at all times material herein, the beneficial owner of the insurance policies and upon the death of the insured was entitled to have the proceeds paid to it. They contend that, such being the situation, the applicable and controlling principle is that no income inures to the insured employees from premium payments where the corporation is the beneficiary and owner of the insurance policies. The respondent takes the position that the agreements were merely agreements between Joseph and Henry, who owned substantially all of the outstanding capital stock of the corporation; that upon the death of either, the survivor would devote the proceeds he received from the insurance on his brother's life to the purchase of the deceased brother's stock at a price based solely on their desire; and that by virtue of the agreements, the corporation merely became the conduit through which the desired result would be accomplished. He contends that under such circumstances the benefits resulting from the insurance policies will inure directly to Joseph and Henry, that the payment of premiums on the policies by the corporation constituted an application by Joseph and Henry of corporate funds for their personal benefit, and that the decision in the instant cases should be controlled by the principle that premiums paid by a corporation on insurance on the lives of officers or employees where the corporation is not a beneficiary constitute taxable income to the insured.

Beginning in 1942 and continuing into 1950, the taxable year involved herein, Joseph obtained policies of insurance totaling $45,000 on his life. During 1950, and for several years prior thereto with respect to the policies obtained prior to 1950, the beneficiary of the policies was his brother, Henry. Further, as to the earliest policies totaling $10,000, Henry was the possessor of the exclusive right to change the beneficiary. Likewise, beginning in 1942 and continuing into 1950, Henry obtained policies of insurance totaling $45,000 on his life. During 1950, and for several years prior thereto with respect to the policies obtained prior to 1950, the beneficiary of the policies was his brother, Joseph. Further, as to the earliest policies totaling $10,000, Joseph was the possessor of the exclusive right to change the beneficiary.

To the close of 1950, the corporation had never been named in any of the policies, or by endorsement thereto, as beneficiary. By endorsements in May 1952, or more than 16 months after the close of the taxable year in question, the corporation was named beneficiary of each of the policies, Henry, his executors, or administrators, were

designated as the possessor of the exclusive right to change the beneficiary of the policies issued on Joseph's life, and Henry was designated as the possessor of the exclusive right to change the beneficiary of the policies issued on his life. The endorsements in May 1952 followed the respondent's examination of the tax liability of the petitioners which terminated in the determination of the deficiencies in controversy.

From a consideration of the agreement between Joseph and Henry late in 1946 in connection with the action taken at the stockholders' meeting on November 2, 1950, and the other evidence of record, we are of the opinion, and have found as a fact, that Joseph and Henry intended that, in the event of the death of either, the corporation should be the owner of the proceeds of the policies on the life of the deceased party and that such ownership should be for the sole purpose of purchasing the stock interest of the deceased party in the corporation at a price which had been agreed upon by them prior to the death of either. While it is true that the agreement made in 1946 recites no specific value of the stock of the corporation, it makes clear that the proceeds from the insurance on the life of the party which might die were to be used by the corporation to buy the interest of the deceased party in the corporation. We see nothing in that agreement to indicate that some amount less than all of the proceeds was to be employed for that purpose. At the time the agreement was entered into, only $5,000 of insurance had been obtained by each. However, in the latter part of December 1946, Joseph and Henry each applied for additional insurance on his life and by the end of January 1947 additional policies of insurance totaling $15,000 had been issued to each. On November 2, 1950, on which date a stockholders' meeting was held at which the corporation's stock was valued at $110,000, or $244.44 a share, Joseph and Henry each made application for additional insurance in the amount of $25,000. By the following December 8, policies had been issued to them in the amounts applied for. This brought the total amount of insurance on the life of each to $45,000. But, on the basis of a value of $244.44 per share for the corporation's stock, the value of the 220 shares owned by each, Joseph and Henry, was approximately $53,775, or approximately $8,775 in excess of the amount of insurance on their respective lives. Obviously if either Joseph or Henry had died after November 2, 1950, the proceeds from the insurance on his life would have been substantially insufficient to pay for all of his stock at the price per share which they had agreed upon. And, of course, there would be no part of the proceeds remaining which the corporation could retain.

In view of what has been said above, it appears that if Joseph or Henry had died during the taxable year, the corporation would not have been enriched by receiving the proceeds from insurance policies

on the life of the deceased and using them to purchase stock he had owned in the corporation. The corporation's indebtedness to creditors would have remained undiminished, and while the corporation would have eliminated at least the greater part of the deceased's ownership interest in it, represented by his stock, the proportional interest of the surviving stockholder, or stockholders, thereby would have been greatly increased. In this situation and since the record does not otherwise indicate any benefit which might flow to the corporation from the purchase of a deceased insured's stock interest, we conclude that during the taxable year the corporation was neither the beneficial owner nor the beneficiary of the insurance policies on the lives of Joseph and Henry involved here.

The record is not entirely clear as to whether under the agreements of 1946 and November 2, 1950, the corporation, upon the death of Joseph or Henry, was obligated to purchase all of his stock in it, or was obligated to purchase only so much of it as the proceeds of the insurance on his life would pay for at an agreed price. However, we think that is immaterial since the corporation was obligated to use all of the proceeds it might receive to purchase stock.

By providing that, if either of them should die, the proceeds of the insurance on his life should be devoted to the purchase by the corporation of his stock at a previously agreed upon value, irrespective of how much less the actual value of the stock might be, Joseph and Henry created an arrangement whereby the estate of the deceased would be assured of receiving for stock of the deceased the entire amount of the proceeds from the insurance on the life of the deceased. Further, the survivor, without any cost to him, would have his proportional interest in the corporation so greatly increased that he would become, by far, the dominant stockholder of the corporation with its going business. In addition he would have the power to name anyone he wished as the beneficiary of the insurance on his life. Such being the situation at the close of 1950, we are of the opinion that Joseph and Henry each had interests in the policies of insurance on their lives that were of such magnitude and of such value as to constitute them direct or indirect beneficiaries of the policies. Cf. *Ernest J. Keefe*, 15 T. C. 947.

Since it is neither shown nor claimed that the endorsements made on the policies in May 1952 were intended to be retroactive and since the year 1952 is not before us, we express no opinion as to the effect of those endorsements.

Having heretofore concluded that in 1950 the corporation was not a beneficiary of the insurance policies here involved but that Joseph and Henry were direct or indirect beneficiaries of the policies, we are of the opinion that the respondent's determinations that the premiums paid

on the policies of insurance on their respective lives constituted taxable income to them, respectively, were correct.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

———

OPPER, *J.,* dissenting: It is not clear to me whether the Opinion charges petitioners with income because the corporation was not expressly named the beneficiary of the policy; or because, even if it had been, it was the stockholders and not the corporation that were the true beneficiaries.

If the former, it seems to me to do violence to the concept that substance rather than form is the touchstone of most tax problems. Here the corporation paid the premiums, its interest in the policies was entered on the corporate minutes and, as I read the governing Massachusetts law, it could under these circumstances apply to a court of equity to collect the proceeds. *Massachusetts Linotyping Corporation* v. *Fielding,* 312 Mass. 147, 43 N. E. 2d 521. See also *Brierly* v. *Equitable Aid Union,* 170 Mass. 218, 48 N. E. 1090; *Handrahan* v. *Moore,* 332 Mass. 300, 124 N. E. 2d 808.

It is true, of course, that the stockholders, or at least one of them, would benefit when the corporation collected the insurance proceeds. But to say that the purchase agreement made the stockholders the beneficiaries under the policies seems to me to ignore unjustifiably the corporate existence. It is difficult to think of any case where the stockholders do not indirectly benefit when the corporation receives funds. It is likewise true that in this case the corporation would in all probability be required to use the proceeds for the purpose to which, under the corporate minutes, they were to be devoted.

But this is not to say that the corporation would not thereby correspondingly benefit. A corporation's purchase of its own stock can be viewed as a corporate purpose, *Dill Manufacturing Co.,* 39 B. T. A. 1023; *Gazette Pub. Co.* v. *Self,* (E. D., Ark.) 103 F. Supp. 779, and places in the treasury a corporate asset. See *United States* v. *Anderson, Clayton & Co.,* 350 U. S. 55. And I do not read the record as indicating, as the majority appear to do, that the value of the stock would necessarily be less than the amount petitioners agreed upon. Although the record contains no evidence of actual value, every compulsion of self-interest could cause these petitioners to arrive at a value as nearly correct as possible since neither knew whose estate would receive the payment.

The present result seems to me to destroy the symmetry of the pattern now designed for taxing corporate life insurance. This corporation, being at least indirectly a beneficiary, see *Ernest J. Keefe,* 15 T. C. 947, should not be permitted to deduct the premiums even though

the insured is an officer or employee. Sec. 24 (a) (4), I. R. C. 1939. If and when the proceeds are collected and distributed, the stockholders would, in the absence of the buy-sell agreement, be taxable upon the distribution as a dividend. *Edwin Lindsey Cummings*, 28 B. T. A. 1045, affd. (C. A. 1) 73 F. 2d 477; *Delia B. Golden, Executrix*, 39 B. T. A. 676, affd. (C. A. 3) 113 F. 2d 590; *Isaac May*, 20 B. T. A. 282. And of course, even in the absence of such an agreement, the corporation could always agree subsequently to buy up the stock of a deceased stockholder. If that prior agreement had not existed here, I wonder whether that would make all the difference.

RICE and MULRONEY, *JJ.*, agree with this dissent.