DAVID CENTRE AND MARIAN CENTRE, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 853–68.    Filed October 7, 1970.

*Martin Drazen*, for the petitioners.
*Marlene Gross*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for 1964 in the amount of $6,317.90. The only issue is whether petitioner David Centre received taxable income

in 1964, when, in settlement of a lawsuit against his former employer, he was assigned an insurance policy on his life and was paid $2,698.58 in cash.

David Centre (hereinafter referred to as petitioner) and his wife, Marian, were legal residents of White Plains, N.Y., at the time their petition was filed. Their joint Federal income tax return for 1964 was filed with the district director of internal revenue, Manhattan District, New York, N.Y.

Petitioner was employed by the Charles C. Loehmann Corp. (hereinafter Loehmann or the corporation) from 1951 until December 15, 1962. On October 18, 1954, he and Loehmann entered into an employment contract which provided for an annual salary, the amount of which was to be fixed by a separate agreement. The contract further provided that petitioner could retire at age 65 and receive a retirement income in the amount of $10,000 per year for life; if he died within 10 years after his retirement, his beneficiary was to receive annual payments for the remainder of the 10-year period; if he died before he retired, his beneficiary was to receive $10,000 per year for 15 years. On the same day this agreement was executed, Loehmann acquired an insurance policy on petitioner's life in the face amount of $128,000, and a supplemental disability policy which was designed to assure the payment of the premiums on the life insurance policy. Loehmann paid the premiums on these policies, owned them, and was the designated beneficiary.

A subsequent agreement, executed on November 26, 1954, provided for petitioner's employment for a 5-year period at a salary of $23,400 per year, but made no reference to the agreement of October 18, 1954, and made no provision for either death or retirement benefits.

Petitioner had two new agreements drawn up by his attorney, and he and Loehmann signed them on April 19, 1955. The first of these agreements superseded and revised the agreement of October 18, 1954, as modified on November 26, 1954, by providing that: (1) Petitioner would not be required to live outside the New York City area; (2) his salary would be $30,000 per year instead of $23,400; (3) he would receive a bonus of $13,600 in 1955; (4) future bonuses would be determined by a prescribed standard, and would be less than $13,600 per year only if the net profits of Loehmann declined; and (5) petitioner might continue to be employed after age 65, subject to stated conditions.

The second agreement of April 19, 1955, expressly recognized the existence of the life insurance and supplemental disability policies; the agreement recited that the policies had been "obtained by the employer [Loehmann] for the purpose of establishing, in whole or in part, funds

for the payment by the employer to the employee or his estate or beneficiary of the retirement and death benefits provided for in the said employment agreement." It then provided:

1. The employer shall continue to pay the annual premiums on [the policies] * * * when and as they accrue, so long as the employee is employed by the employer, during which time the said policies shall continue to be owned and held by the employer without change of plan.

2. Any and all dividends on such policies shall remain with the insurance company to accumulate under the Accumulation Plan in said policies contained.

3. The employer shall not at any time incur any indebtedness against said policies.

4. In the event of the discontinuance of the employment by either party prior to the time the employee attains the age of sixty-five years, unless such employment is terminated by reason of any substantial wilfull breach by the employee of said employment agreement, then in such event the employer shall thereupon assign, transfer and set over unto the employee the said policies together with the ownership thereof and all rights and benefits therefrom * * *

5. Nothing herein contained shall be construed to modify the terms of the employment agreement aforementioned, this instrument being intended as a supplement thereto.

No other employment agreements were entered into between petitioner and Loehmann prior to December 15, 1962, when he terminated his employment, except that certain modifications were made with respect to the amounts of his salary and bonuses.

Loehmann refused to assign the insurance policies to petitioner upon the termination of his employment. Thereafter petitioner instituted a suit, which was settled on August 4, 1964. Pursuant to the agreement of settlement, Loehmann transferred to petitioner the insurance policies, having a cash surrender value of $24,670.97, and paid him $2,698.58 in cash; this latter sum was the total amount of dividends on the policies which had been applied, in violation of the supplemental agreement of April 19, 1955, to reduce the premium payments. Petitioner also received from the corporation at this time $5,000 in severance pay, and $28,681.77 as a distribution under a qualified profit-sharing plan.

Loehmann filed a Federal income tax return for 1964 claiming the cash, severance pay, and the value of the insurance policies, a total of $30,963.86,[1] as a deduction for compensation paid. Loehmann also sent petitioner a Form 1099 indicating that this amount had been paid to him as compensation.

In his 1964 Federal income tax return, petitioner reported the amount received on surrender of the insurance policies together with the cash received in settlement of the suit against Loehmann, a total

---

[1] Loehmann claimed only $23,265.28 as the value of the insurance policy. The difference of $1,405.69 between that claimed value and the actual value of the insurance policy has not been explained.

of $27,369.55, as long-term capital gain, the severance pay as ordinary income, and the distribution from the qualified profit-sharing plan as long-term capital gain.

Respondent has determined that the value of the insurance policies plus the cash, a sum of $27,369.55, received in 1964 was taxable as ordinary income rather than as long-term capital gain.

OPINION

During the period of petitioner's employment, Loehmann paid all premiums on the insurance policies which it used to fund its obligation to make deferred compensation payments to petitioner or his beneficiary. Although petitioner did not report any of the premiums paid by Loehmann as taxable income, he now contends that he received the economic benefit of the payment of the premiums on the policies and that he, therefore, received taxable income in the amount of the premiums as they were paid in 1954 through 1962. On this ground, he seeks escape from tax on the cash and the value of the policies when they were transferred to him upon termination of his employment in 1964.

We hold that the value of the insurance policies and the cash received by petitioner in 1964 are taxable to him in that year as ordinary income.[2]

Section 61 (a) (1) of the Internal Revenue Code of 1954 defines gross income to mean "all income from whatever source derived," including "Compensation for services." The section provides a broad sweep, covering all income derived from the performance of services regardless of how it is paid. See *Commissioner* v. *LoBue*, 351 U.S. 243, 247 (1956). The language is "broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected." *Commissioner* v. *Smith*, 324 U.S. 177, 181 (1945). Thus, where an employee receives the economic benefit of the payment of premiums on insurance on his life, he realizes gross income, measured by the value of the insurance coverage. *E. T. Sproull*, 16 T.C. 244 (1951), affirmed per curiam 194 F.2d 541 (C.A. 6, 1952); *Renton K. Brodie*, 1 T.C. 275 (1942).

To constitute taxable income, however, the economic or financial benefit must be conferred on the employee in the tax year. The naked promise of an employer to pay compensation at some future date for services currently rendered is not income to a cash basis employee. This is true even where the employer currently procures insurance on

---

[2] There is no stipulation of fact nor has any evidence been introduced as to the method of accounting used by petitioner. However, both parties have assumed he used the cash method, and we proceed upon that assumption.

the life of the employee to fund future compensation payments. Where the insurance remains an asset of the employer to which all creditors have rights and the employee acquires no immediate rights thereto, he realizes no income from the payment of premiums on the insurance. The employee still has only a contract right to his deferred compensation. *Casale* v. *Commissioner*, 247 F.2d 440 (C.A. 2, 1957), reversing 26 T.C. 1020 (1956), acq. 1959–1 C.B. 66; see also *Prunier* v. *Commissioner*, 248 F.2d 818, 820 (C.A. 1, 1957), vacating and remanding 28 T.C. 19 (1957), acq. 1959–1 C.B. 66; *Edward D. Lacey*, 41 T.C. 329 (1963).

In the instant case, Loebmann was the purchaser, owner, and beneficiary of the policies. Petitioner had only a contract right to deferred compensation which was payable in the event of his retirement, death prior to retirement, or death within 10 years after retirement. These payments were not keyed to the amount of the insurance coverage in any way. He acquired no immediate interest in the policies. His only right to the insurance policies was to have them assigned to him by Loehmann upon the termination of his employment before he reached age 65, but if his employment was terminated for cause he had no such right. While Loehmann was required by contract to pay the premiums and accumulate the dividends on the policies and was forbidden to borrow on them, the fact remains that they were its assets and were subject to the claims of its creditors. The restrictions on Loehmann's ability to deal with the policies—e.g., the contract provisions that the dividends were to be accumulated and that no indebtedness would be incurred against the policies—may have enhanced the likelihood of its making the future payments, but such restrictions did not confer any immediate financial benefit on petitioner. Consequently, he did not realize any taxable income from the payment of premiums during 1954 through 1962; he realized taxable income from the policies only when they were assigned to him in 1964. See *Casale* v. *Commissioner, supra.*

*Paul L. Frost*, 52 T.C. 89 (1969), relied upon heavily by petitioner is inapposite. In that case an agreement between the taxpayer and his employer provided that the taxpayer or his heirs would receive "either the cash surrender value, the retirement benefits accruing under said policies, or the face value" of the policies. In order to carry out the terms of the agreement, the policies were transferred to a trust, revocable only with the consent of the employer and the taxpayer. Upon transfer of the policies to the trust they were no longer among the general assets of the employer, but rather were irrevocably committed to carrying out the agreement. This Court was of the view that, as a result of the transfer, the taxpayer received something more than a

mere promise of future payment, and held that the premiums paid during the tax years constituted taxable income to the employee.

Consistent with the foregoing conclusions,

*Decision will be entered for the respondent.*