T.C. Memo. 2005-238

UNITED STATES TAX COURT

JAMES WILSON RICHMOND, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7438-04L.              Filed October 12, 2005.

James Wilson Richmond, Jr., pro se.

<u>Innessa Glazman Molot</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  This case arises from a petition for
judicial review pursuant to section 6330[1] of respondent's
determination to proceed with collection by levy with respect to
petitioner's income tax liability for 2000.  The issue we must

---

[1]Section references are to the Internal Revenue Code in
effect at relevant times.

decide is whether respondent's determination constituted an abuse of discretion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Silver Spring, Maryland.

Petitioner, a self-employed attorney during the relevant years, filed income tax returns for 1999 and 2000 on August 21, 2001. He properly filed a Form 1040, U.S. Individual Income Tax Return, for 1999 (the 1999 return) but improperly filed a Form 1040A,[2] Individual Income Tax Return, for 2000 (the 2000 return). The income petitioner reported on both the 1999 and 2000 returns consisted of business income as reflected on Schedules C, Profit or Loss from Business, attached to the returns. Because the 2000 return did not have a line for reporting Schedule C income, petitioner improperly reported that income as wages, salaries, tips, etc.

On the 1999 return, petitioner reported total tax of $3,223, total payments of $6,000, and an overpayment of $2,777. On the

---

[2]The instructions to the 2000 Form 1040A direct individuals with business income to file a Form 1040 rather than a Form 1040A.

return, petitioner directed that the overpayment be applied to his 2000 estimated tax.

On the 2000 return, petitioner reported gross receipts of $64,957.98, total expenses of $21,400.36, and net profit of $43,557.62. He also reported a $400 IRA distribution as income and claimed an IRA deduction of $1,000. He reported adjusted gross income of $42,957.62. He claimed the standard deduction of $4,400, deducted $2,800 for one exemption, and reported taxable income of $35,757.62 ($42,957.62 - $4,400 - $2,800). Petitioner reported tax of $6,605 without regard to his self-employment tax.

Petitioner made numerous mistakes in calculating his 1999 and 2000 tax liabilities. In computing his self-employment tax for 2000, petitioner correctly reported his net earnings from self-employment to be $40,225; i.e., 92.35 percent of his Schedule C net profit ($43,558 x 0.9235). However, petitioner erroneously calculated his self-employment tax to be $1,665, as follows:

| Line | Item | Amount |
|------|------|--------|
| 1 | Net farm profit from Schedule F | -- |
| 2 | Net profit from Schedule C | $43,557.62 |
| 3 | Combine lines 1 and 2 | 43,557.62 |
| 4a | Multiply line 3 by 0.9235 | 40,225.00 |
| 4b | Optional method amount | -- |
| 4c | Combine lines 4a and 4b | 40,225.00 |
| 5b | Church employee income | -- |
| 6 | Net earning from self-employment (combine lines 4c and 5b) | 40,225.00 |
| 7 | Maximum amount of combined wages and self-employment earnings subject to social security tax for 2000 | 76,200.00 |
| 8a | Total social security wages and tips | -- |
| 8b | Unreported tips | -- |
| 8c | Add lines 8a and 8b | 43,557.00 |
| 9 | Subtract line 8c from line 7 | -- |
| 10 | Multiply the smaller of line 6 or line 9 by 0.124 | [1]498.79 |
| 11 | Multiply line 6 by 0.029 | 1,166.53 |
| 12 | Self-employment tax (add lines 10 and 11) | 1,665.31 |

[1]This number is incorrect; the product of $40,225 (line 6 amount) and 0.124 is $4,987.90.

Petitioner erroneously reported total tax of $7,437.65, which he computed by adding $832.65 (approximately 50 percent of the $1,665.31 self-employment tax he computed) to the $6,605 tax on his taxable income.

Without regard to the 1999 overpayment, petitioner made three estimated tax payments ($1,331.50, $5,233, and $1,374.37) totaling $7,938.87 for 2000. He claimed total 2000 estimated tax payments of $10,705.87 that included the estimated tax payments

plus the amount applied from the 1999 return.[3]  On the 2000 return, he claimed an overpayment of $3,268.22 and directed that it be applied to his 2001 estimated tax.

Although petitioner reported payments totaling $6,000 for 1999, in fact he made payments totaling $6,600 and had an overpayment of $3,377 ($3,223 - $6,600) in 1999.  Respondent did not apply that overpayment to petitioner's 2000 estimated tax as petitioner directed on the 1999 return.  Instead, respondent credited, as of April 15, 2000, the $3,377 overpayment from 1999 to petitioner's unpaid tax for 1994.[4]

With respect to 2000, respondent assessed a total tax of $11,091.22, rather than the $7,437.65 petitioner reported on the 2000 return.  The tax assessed was calculated on $40,350 of adjusted gross income, $33,150 of taxable income, and $5,214 of self-employment tax.  Respondent attributed the increase in the tax assessed over that reported on petitioner's return to mathematical errors on the 2000 return.  As a result of respondent's adjustments, respondent determined that petitioner underreported his income tax by $3,653.57 ($11,091.22 - $7,437.65).  Because respondent credited petitioner's overpayment

[3]We note the tax payments so claimed correctly total $10,715.87 ($7,938.87 + $2,777).

[4]The transcript of petitioner's 1999 account shows that petitioner's 1999 overpayment was credited to his 1994 liability during the 40th week of 2001.  The Court takes judicial notice that the 40th week of 2001 was the first week in October 2001.

from 1999 to taxes petitioner owed for 1994 and applied only petitioner's three estimated tax payments for 2000 totaling $7,938.87 to petitioner's 2000 tax liability, respondent determined that petitioner underpaid his taxes for 2000 by $3,152.35 ($11,091.22 - $7,938.87). Respondent also assessed a penalty for underpayment of estimated tax and interest.

The transcript of petitioner's 2000 taxes shows that on November 5 and 12, 2001, respondent sent petitioner notices of balance due for his 2000 taxes. On July 30, 2002, petitioner filed a petition for bankruptcy under 11 U.S.C chapter 7 seeking discharge of his tax liabilities for 1992-95. On November 13, 2002, the bankruptcy court granted petitioner a discharge of those taxes.

On October 14, 2003, respondent issued a Final Notice of Intent to Levy and Notice of Right to a Hearing with respect to petitioner's 2000 tax liability. Petitioner filed a timely request for a hearing.

On March 24, 2004, Appeals Officer Jacquelyn Sansbury met with petitioner. Appeals Officer Sansbury had no prior involvement with regard to petitioner's tax liabilities. At the meeting, petitioner asserted the proposed collection of the 2000 taxes was improper because the Internal Revenue Service (IRS) ignored his direction to apply the 1999 overpayment to his 2000 estimated taxes.

OPINION

A.   Section 6330

Section 6330 entitles a taxpayer to notice and an opportunity for a hearing before the IRS can begin the process of tax collection by lien and/or levy.  Upon request, a taxpayer is entitled to a fair hearing before an impartial officer from the IRS Office of Appeals.  Sec. 6330(b)(1), (3).  At the hearing, the Appeals officer is required to verify that the requirements of any applicable law or administrative procedure have been met and to consider any relevant issue the taxpayer raises relating to the unpaid tax or the proposed levy.  Sec. 6330(c)(1) and (2)(A).

A taxpayer may generally raise any relevant issue relating to his/her unpaid tax liability or the proposed levy during the hearing.  Relevant issues include an appropriate spousal defense, challenges to the appropriateness of the collection action, and offers of collection alternatives.  Sec. 6330(c)(2)(A).  The taxpayer may challenge the existence or amount of the underlying tax liability if he/she did not receive a statutory notice of deficiency for the tax liability or did not have an opportunity to dispute it.  Sec. 6330(c)(2)(B).

Following the hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues raised

by the taxpayer at the hearing, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3).

If the Commissioner issues a determination letter to the taxpayer following an administrative hearing, the taxpayer may file a petition for judicial review of the administrative determination. Sec. 6330(d)(1); Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).

We have jurisdiction over this matter because petitioner filed a timely petition for review in response to respondent's valid notice of determination to proceed with collection. See sec. 6330(d)(1); Lunsford v. Commissioner, 117 T.C. 159 (2001); Sarrell v. Commissioner, 117 T.C. 122 (2001); Sego v. Commissioner, 114 T.C. 604, 610 (2000); Offiler v. Commissioner, 114 T.C. 492, 498 (2000); Hochschild v. Commissioner, T.C. Memo. 2002-195. In a proceeding commenced under section 6330(d), the Court applies a de novo standard to determine a taxpayer's underlying tax liability, when and if it is at issue, and an abuse of discretion standard to review certain other administrative determinations of the Commissioner. Sego v. Commissioner, supra at 610.

The crux of petitioner's complaint is that had respondent applied petitioner's 1999 overpayment as an estimated tax payment toward his 2000 tax liability, petitioner's 2000 tax liability would have been paid.  Thus, petitioner challenges his underlying tax liability for the year at issue.  See Landry v. Commissioner, 116 T.C. 60, 62 (2001).

Respondent did not issue, and petitioner did not receive, a statutory notice of deficiency for 2000.  Petitioner's 2000 taxes were not discharged in his bankruptcy proceeding, and he did not otherwise have an opportunity to argue that his 1999 overpayment should be applied to his 2000 tax liability.  Consequently, petitioner may challenge that liability, and we have jurisdiction to consider it.  We also have jurisdiction to consider petitioner's tax liabilities for 1999 and 1994, years that were not the subject of the notice of determination, insofar as they are relevant to computing petitioner's 2000 tax liability.  See Freije v. Commissioner, 125 T.C. 14 (2005).

B.    Verification That Requirements of Applicable Law and
      Administrative Procedure Have Been Met

Section 6330 requires the Appeals officer to verify that the requirements of any applicable law or administrative procedure have been met.  Consequently, the Appeals officer must verify that the underlying tax was properly assessed.

Section 6201 authorizes the Secretary to assess all taxes reported by the taxpayer on his/her return.  Generally, the

Secretary may not assess tax greater than that reported on the return without issuing a statutory notice of deficiency.[5]  An exception to the general rule permits the Secretary to assess an additional amount resulting from a mathematical or clerical error appearing on the return.  Sec. 6213(b).  Additionally, if a tax return or claim for refund of income taxes under subtitle A of the Internal Revenue Code contains an overstatement of the amount paid as estimated income tax, the Secretary may assess the overstated amount "in the same manner as in the case of a mathematical or clerical error appearing upon the return".  Sec. 6201(a)(3); see Schlosser v. Commissioner, 94 T.C. 816, 824-825 (1990), affd. without published opinion 2 F.3d 404 (11th Cir. 1993).

1.  Mathematical and Clerical Errors

The term "mathematical or clerical error" is defined to include an error in addition, subtraction, multiplication, or division; incorrect use of any table that is apparent from the return; inconsistent entries on the return; omission of information required to substantiate an entry; and an entry on a

---

[5]Sec. 6211(a) provides in pertinent part that in the case of income taxes imposed by subtit. A the term "deficiency" means the amount by which the tax imposed by subtit. A exceeds the amount of tax shown by the taxpayer on his/her return.  Sec. 1401, which imposes the tax on self-employment income, is a part of subtit. A of the Internal Revenue Code.

return of a deduction or credit in an amount that exceeds a statutory limit. Sec. 6213(g)(2).

On his 2000 return, petitioner reported a total tax liability of $7,437.65--$6,605 tax on taxable income of $35,757.62 plus $832.65 (approximately 50 percent of the $1,665.31 self-employment tax he computed). Respondent assessed a total tax of $11,091.22, rather than the $7,437.65 petitioner reported on the return. Respondent determined that the deficiency was attributed to a mathematical error and did not issue a notice of deficiency. The statutory notice of balance due explaining the changes in the amount of tax assessed is not in the record.

The transcript of petitioner's 2000 taxes reflects that respondent assessed petitioner's taxes on the basis of $40,350 of adjusted gross income, $33,150 of taxable income, and $5,214 of self-employment tax. On the basis of those numbers, we conclude that respondent assessed income tax of $5,877 ($11,091 - $5,214) on $33,150 of taxable income, consistent with the tax table for 2000. As a result of respondent's adjustments, respondent determined that petitioner underreported his income tax by $3,653.57 ($11,091.22 - $7,437.65).

There is no notice of deficiency to explain how respondent computed petitioner's 2000 tax liability. At the trial of this case and on brief, respondent explained the correction of

mathematical errors (using petitioner's method of computing the self-employment tax) as follows:

| | | |
|---|---|---:|
| 1 | Net farm profit from Schedule F | -- |
| 2 | Net profit from Schedule C | $43,557.62 |
| 3 | Combine lines 1 and 2 | 43,557.62 |
| 4a | Multiply line 3 by 0.9235 | 40,225.00 |
| 4b | | -- |
| 4c | Combine lines 4a and 4b | 40,225.00 |
| 5b | | -- |
| 6 | Net earning from self-employment (combine lines 4c and 5b) | 40,225.00 |
| 7 | Maximum amount of combined wages and self-employment earnings subject to social security tax for 2000 | 76,200.00 |
| 8a | Total social security wages and tips | -- |
| 8b | Unreported tips | -- |
| 8c | Add lines 8a and 8b | 43,557.00 |
| 9 | Subtract line 8c from line 7 | 32,643.00 |
| 10 | Multiply the smaller of line 6 or line 9 by 0.124 | 4,047.73 |
| 11 | Multiply line 6 by 0.029 | 1,166.53 |
| 12 | Self-employment tax. Add lines 10 and 11. | 5,214.26 |

In computing petitioner's self-employment tax, respondent erroneously subtracted $43,558 (petitioner's Schedule C net profit which petitioner reported on line 7 of Form 1040A as wages, salaries, and tips) from $76,200 (the maximum amount of combined wages and self-employment earning subject to Social Security tax for 2000). Petitioner had no employment income other than Schedule C income.

Petitioner had a net profit of $43,558 in 2000 as reflected on Schedule C attached to his 2000 return. Thus, for purposes of computing his self-employment tax, petitioner had net earnings from self-employment of $40,225; i.e., 92.35 percent of his Schedule C net profit ($43,558 x 0.9235). Petitioner's correct

self-employment tax was $6,154; i.e., 15.3 percent of his net earnings from self-employment ($40,225 x 0.153), rather than $1,665 as he reported on the 2000 return.

Petitioner's correct tax liability for 2000 is $11,891, computed as follows:

| | | |
|---|---|---|
| Business income (Schedule C) | | $43,558 |
| Total IRA distributions | | 400 |
| Total income | | 43,958 |
| | | |
| IRA deduction | $1,000 | |
| One-half self-employment tax | 3,077 | |
| | | 4,077 |
| Adjusted gross income | | 39,881 |
| | | |
| Standard deduction | 4,400 | |
| Exemption | 2,800 | |
| | | 7,200 |
| Taxable income | | 32,681 |
| | | |
| Tax on taxable income | | $5,737 |
| Self-employment tax | | 6,154 |
| Total tax | | 11,891 |

Petitioner understated his 2000 tax liability by $4,453 ($11,891 - $7,438). That understatement is attributable to mathematical and clerical errors, and respondent was not required to issue a notice of deficiency. Respondent did not assess tax greater than the amount properly computed on the income petitioner reported on his return or greater than that attributable to petitioner's mathematical and clerical errors. To the contrary, respondent made an error in the calculation of petitioner's self-employment tax and consequently assessed petitioner $800 less than he actually owed. Therefore,

respondent was not required to issue a notice of deficiency, and the taxes were properly assessed.

Petitioner filed his 1999 return on August 21, 2001. The 3-year period for assessing additional tax for petitioner for 1999 has expired. See sec. 6501(a). Hence, respondent may collect only the amount previously assessed.

2. Overstatement of Estimated Taxes

A deficiency for a given year is the correct amount of tax less the amount shown as tax on the tax return. Sec. 6211(a); Laing v. United States, 423 U.S. 161, 173 (1976). Both the correct amount of tax and the amount shown on the return are computed without regard to credits for estimated tax payments. Secs. 31, 6211(a) and (b)(1); sec. 301.6211-1(b), Proced. & Admin. Regs. An assessment by the Commissioner of tax greater than that reported on the return attributable to a taxpayer's overstatement of estimated tax payments is not a deficiency within the meaning of section 6211. See Hutchinson v. United States, 677 F.2d 1322, 1326 (9th Cir. 1982); Judge v. Commissioner, 88 T.C. 1175, 1183 (1987); Bregin v. Commissioner, 74 T.C. 1097 (1980); Keefe v. Commissioner, 15 T.C. 947, 955 (1950).

If a tax return or claim for refund of income taxes under subtitle A of the Internal Revenue Code contains an overstatement of the amount paid as estimated income tax, the overstated amount

"may be assessed by the Secretary in the same manner as in the case of a mathematical or clerical error appearing upon the return". Sec. 6201(a)(3); see Schlosser v. Commissioner, 94 T.C. at 824-825. Consequently, respondent was not required to issue a notice of deficiency for the underpayment of tax attributable to any overstatement of petitioner's estimated tax payments.

3. The Right of Setoff Under Section 6402(a)

When a taxpayer makes voluntary payments to the IRS, he/she has a right to direct the application of those payments to whatever liability he chooses. Wood v. United States, 808 F.2d 411, 416 (5th Cir. 1987); Muntwyler v. United States, 703 F.2d 1030, 1032 (7th Cir. 1983); O'Dell v. United States, 326 F.2d 451, 456 (10th Cir. 1964). Under the voluntary payment rule, when a taxpayer who has outstanding tax liabilities voluntarily makes a payment, the IRS usually will honor a taxpayer's request as to how to apply that payment. United States v. Ryan, 64 F.3d 1516, 1522 (11th Cir. 1995). However, section 6402(a) and the regulations promulgated thereunder demonstrate that a taxpayer's right to designate his/her voluntary payments does not extend to an overpayment reported on a return.

Section 6402(a) allows the IRS to credit an "overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who

made the overpayment" and, subject to certain limitations, refund any balance to the person.  In lieu of a refund, a taxpayer can instruct the IRS to credit his overpayment against the estimated tax for the taxable year immediately succeeding the year of the overpayment.  Sec. 301.6402-3(a)(5), Proced. & Admin. Regs.   It is well settled that the IRS need only refund, or apply to the taxpayer's estimated tax, that portion of the overpayment that exceeds the taxpayer's "outstanding liability for any tax".  Sec. 301.6402-3(a)(6)(i), Proced. & Admin. Regs.; see N. States Power Co. v. United States, 73 F.3d 764, 767 (8th Cir. 1996) (quoting United States v. Ryan, supra at 1523 ("[Section 6402], 'plainly gives the IRS the discretion to apply overpayments to any tax liability'")); Pettibone Corp. v. United States, 34 F.3d 536, 538 (7th Cir. 1994) (section 6402(a) "leaves to the Commissioner's discretion whether to apply overpayments to delinquencies or to refund them to the taxpayer"); Kalb v. United States, 505 F.2d 506, 509 (2d Cir. 1974) (rejecting the argument that because the tax overpayment was voluntary, the IRS was bound to comply with the taxpayer's direction about how to apply that payment; section 6402(a) "clearly gives the IRS discretion to apply a refund to 'any liability' of the taxpayer").

Respondent's application of petitioner's 2000 overpayment to petitioner's 1994 tax liability falls within respondent's

authority to credit overpayments to any liability for any tax year and, therefore, was proper.

4.   Violation of Automatic Bankruptcy Stay

Petitioner asserts that the bankruptcy court discharged his 1994 tax liability when it granted petitioner a discharge on November 13, 2002, and that respondent's application of the $3,377 from petitioner's 1999 account to his 1994 tax liability violated the automatic stay imposed under 11 U.S.C. sec. 362. We have jurisdiction in this levy proceeding to determine whether petitioner's unpaid liabilities were discharged in bankruptcy. See Washington v. Commissioner, 120 T.C. 114 (2003).

The Certificates of Official Record for petitioner's 1994 and 1999 tax years reflect that the $3,377 overpayment from petitioner's 1999 account was applied to petitioner's outstanding 1994 tax liability in October 2001. Petitioner did not file his bankruptcy petition until July 30, 2002. Thus, there could not have been a violation of the automatic bankruptcy stay before the filing of a bankruptcy petition. We conclude, therefore, that respondent's application of the funds from petitioner's 1999 overpayment was permitted. Moreover, since the funds were applied to petitioner's 1994 tax liability before petitioner filed for bankruptcy, petitioner was no longer liable for that portion of the 1994 liability when he filed for bankruptcy. Consequently, any of petitioner's 1994 tax liability discharged

by the bankruptcy court did not include amounts paid before his filing his petition with the bankruptcy court.

Aside from challenging his underlying tax liability, petitioner did not raise any relevant issue relating to the proposed levy. He offered no collection alternatives. On the basis of the foregoing we conclude that there was no abuse of discretion by respondent's Appeals officer. All the requirements of section 6330 have been satisfied, and respondent may proceed with the proposed levy to collect the tax liability assessed against petitioner for 2000.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.